IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:15CV201 |
| vs. | § | |
| | § | JUDGE: |
| CITY OF BEAUMONT, TEXAS, | § | MAGISTRATE: |
| | § | |
| Defendant. | § | |

## COMPLAINT

The United States of America alleges as follows:

### I. INTRODUCTION

1. The United States brings this action for declaratory and injunctive relief, monetary damages and civil penalties against the City of Beaumont, Texas (the "City"), under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. §§ 3601-3631, and Titles II and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, 12203, as well as Title II's implementing regulation, 28 C.F.R. Part 35. The City has discriminated on the basis of disability by preventing or inhibiting the operation of small community homes of up to four residents for persons with intellectual or developmental disabilities, as follows: 1) by imposing a one-half mile spacing requirement for such homes, and 2) by imposing overly-restrictive fire code requirements that are not imposed on similarly situated uses and that exceed the State of Texas' requirements for community homes. Under these discriminatory policies, the City has compelled the closure of several community homes

**Complaint – Page 1**

and, in some cases, forced residents to enter a nursing home. Numerous other homes for persons with disabilities have not been able to open due to the City's restrictions. As such, the City has engaged in a pattern or practice of discrimination because of disability, in violation of the FHA and the ADA.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action and may grant the relief sought herein pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. § 3614(a); 42 U.S.C. §§ 12133 and 12134; and 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged herein occurred in this district and because the Defendant is located there.

## III. DEFENDANT

4. Defendant City of Beaumont is a unit of government organized under the Constitution and laws of the State of Texas. See Tex. Local Gov't Code § 5.004.

5. Under the City's Home Rule Charter, the City has the capacity to sue or be sued. Charter of the City of Beaumont, Tex., Art. 1, Sec. 2.

6. The City – including but not limited to the City Council, the Community Development Department, the Fire Department, and the Zoning Board of Appeals – is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35.

## IV. FACTUAL ALLEGATIONS

### A. Community Homes for Persons with Intellectual or Developmental Disabilities

7. Through Medicaid, the State of Texas ("State" or "Texas") provides community residential services for persons with intellectual or developmental disabilities through small group homes and apartments ("community homes") that serve no more than four persons. Most community homes have three or fewer residents, and some, such as those located in apartment units, have as few as one resident. They include small group homes with round-the-clock staff, group homes with intermittent staff for persons with disabilities who are more independent, and foster or companion care homes in which the caregiver also lives in the home. Such homes provide an integrated alternative to large, congregate institutions or nursing facilities and have enabled thousands of individuals with disabilities to move out of, or avoid living in, institutions and nursing facilities, where they would be segregated from the broader community.

8. The State, through the Department of Aging and Disability Services, regulates, certifies and oversees community homes for persons with intellectual or developmental disabilities. This oversight includes inspections of community homes at regular intervals to ensure compliance with Medicaid requirements as well as state regulations, including fire safety requirements.

### B. Beaumont's One-Half-Mile Spacing Requirement for Community Homes

9. The City, through its Community Development Department, enforces a one-half mile spacing rule for community homes for persons with intellectual or developmental disabilities. In other words, no community home may operate in Beaumont if it is within one-half mile of another community home.

**Complaint – Page 3**

10. Beaumont applies this spacing requirement to all community homes regardless of size, including against homes and/or apartment units with three or fewer residents. According to a map prepared by the City, this rule currently prohibits new community homes from opening or operating in most of Beaumont's residential neighborhoods.

11. Beaumont's one-half mile spacing rule applies only to community homes for persons with disabilities. Beaumont's Zoning Code allows three unrelated persons to live together as of right in residential districts. There is no spacing rule for homes in which three unrelated persons without disabilities reside, or for any housing for persons without disabilities.

12. The City's one-half mile spacing requirement is not codified in the City's ordinances. The City claims that this rule is based on the Texas Community Homes for Disabled Persons Location Act, Tex. Hum. Res. Code §§ 123.001-123.010, which Beaumont erroneously maintains establishes a mandatory half-mile spacing rule for small community homes.

13. State regulations governing community homes do not contain a specific spacing requirement. However, the regulations contain safeguards designed to ensure that community homes are integrated with housing for persons without disabilities. For example, the regulations prohibit locating or congregating community homes in a manner that creates "a residential area distinguishable from other areas primarily occupied by persons who do not require routine support services because of a disability" or where "most of the residents of the dwellings are persons with mental retardation." Tex. Admin. Code § 9.155(a)(5)(H).

C. **Beaumont's Fire Code Requirements for Community Homes**

14. The City of Beaumont has also required community homes for persons with intellectual or developmental disabilities to install various fire safety measures, including:

**Complaint – Page 4**

automatic sprinkler systems; commercial ventilated kitchen hoods with sprinkler systems; lighted exit signs on every bedroom and exit door; "hard-wired" fire alarm systems with a direct connection to the fire department; key boxes; and lowered windows.  These fire safety requirements are required for community homes, regardless of size, including in an individual apartment unit where one person with a disability may live.

15. The City does not impose these requirements on single-family residences and apartments occupied by persons who are not related and who do not have intellectual or developmental disabilities.  The City also does not impose these requirements for in-home child care providers that serve up to 12 children.

16. The City's requirements for community homes are more stringent than those required by the State.  Texas requires all community homes serving persons with disabilities to conduct fire drills and to have, among other things, smoke detectors and alarms.  For community homes with four persons, Texas requires such homes to have a sprinkler system, but only if fire drills indicate that residents cannot evacuate to a point of safety within three minutes with staff assistance.

17. In or about March 2013, the City ceased requiring community homes to have most of these fire safety measures, but continued to require automatic sprinkler systems for all community homes, regardless of size or the individual abilities of residents.

18. Automatic sprinkler systems cost around $30,000 and require annual maintenance and servicing.  As such, they are cost-prohibitive for many service providers and companion care providers.  Furthermore, because of the continuing service expense of sprinklers, landlords may refuse to allow them to be installed or may demand their removal at the conclusion of the

tenancy, which is also cost-prohibitive for many service providers.  Sprinklers may also be technically infeasible to install in apartments in multifamily buildings.  Accordingly, this rule prohibits or significantly limits the ability of community homes for persons with intellectual or developmental disabilities to operate in Beaumont.

   D.   **Beaumont's Enforcement of the Half-Mile and Fire Safety Rules**

   19.   As a result of Beaumont's half-mile spacing rule and fire safety requirements, several community homes have been forced to close and residents with disabilities have been forced to move, including to institutional settings or out of Beaumont.  Other community homes have been prevented from opening, despite increased demand for community homes in Beaumont for persons with disabilities.

   1.   **Alissa Humphrey**

   20.   On June 12, 2012, the City conducted a surprise inspection of the apartment of Alissa Humphrey, a 44-year old woman with intellectual, developmental and physical disabilities.  Ms. Humphrey lived with two other persons with intellectual or developmental disabilities in a first-floor, accessible unit at the Breakwater Bay Apartments, located at 3975 Major Drive in Beaumont.  Ms. Humphrey had lived in this apartment for approximately seven years.

   21.   Following the June 12, 2012 inspection, the City ordered that Ms. Humphrey's community home be closed because the apartment was within one-half mile of another community home and did not have required fire safety features, including a sprinkler system, a fire alarm system, and a commercial ventilated hood.  The City ordered Ms. Humphrey and her roommates to vacate the apartment within 30 days.

**Complaint – Page 6**

22.     Ms. Humphrey did not want to leave her apartment.  Her mother asked the City's Fire Marshal to let Ms. Humphrey stay in her home.  The Fire Marshal, Jack Mattox, responded that Ms. Humphrey "was not supposed to be in that apartment" due to her disabilities, or words to that effect.

23.     The agency that provided community residential services for Ms. Humphrey was not able to find her another community home.  As a result, Ms. Humphrey was transferred to an institutional nursing facility in Beaumont, where she lived for 13 months.

24.     Ms. Humphrey did not want to live in a nursing facility, which was a segregated environment in which she lacked the opportunity to interact with non-disabled persons other than staff.  She was unable to move her furniture and other personal items into the nursing home, including a waterbed that she used to prevent bedsores.  She was also unable to attend her community-based day program while in the nursing home.

25.     In October 2013, with the help of Disability Rights Texas, Ms. Humphrey was able to move into an existing four-person community home in Beaumont that had a vacancy.  This home, however, is also located within one-half mile of another small group home for persons with disabilities.  Accordingly, due to Beaumont's one-half mile spacing rule, Ms. Humphrey's current home is under threat of closure.

   **2. Laura Odom and Todd Hicks**

26.     Laura Odom, age 58, and Todd Hicks, age 36, are persons with intellectual or developmental disabilities who each live in a three-bedroom apartment at Eagles Landing, an apartment complex located at 3980 Major Drive in Beaumont.  Each apartment unit is a community home that is operated and staffed by Jubilee Group Homes, Inc. ("Jubilee"), a service

provider agency located in Beaumont.  Ms. Odom and Mr. Hicks have lived at Eagles Landing since March 2009.

27.	Previously, Ms. Odom lived in a single-family home with two other residents with intellectual or developmental disabilities located at 5050 Laurel Street in Beaumont.  Mr. Hicks lived with two other residents with disabilities in a single-family home at 895 Norwood Street in Beaumont.  Jubilee operated and staffed both homes.

28.	On November 21, 2008, the City's Community Development Department notified Jubilee that Ms. Odom's and Mr. Hicks' community homes, along with a third home operated by Jubilee, violated the City's one-half mile spacing requirement because each was within one-half mile of another community home.  The City demanded that this "violation" be "corrected" by December 9, 2008.

29.	Additionally, between August and December 2008, the City filed multiple criminal complaints and nearly 100 charges in Beaumont Municipal Court against Jubilee's Program Director, Arvy McKinney, for alleged fire code violations at four community homes operated by Jubilee, including Ms. Odom's and Mr. Hicks' homes.  Many of these complaints were duplicative and alleged the same violations at the same properties.  For example, on December 9, 2008, the City filed 14 identical complaints against Ms. McKinney, each of which contained the same seven fire code violation charges at the same property.  That same day, the City's Fire Department threatened to disconnect all utilities from Jubilee's community homes if the violations alleged by the City in Municipal Court were not corrected in five days.

30.	On December 19, 2008, following a meeting between Jubilee and City officials, the City informed Jubilee that it would have until March 1, 2009 either to close these community

homes or bring them into compliance with "the codes of the City of Beaumont." The City wrote that, because of the City's one-half mile spacing restriction, it would not be possible for all of these homes to continue operating as homes for persons with disabilities "because of their proximity."

31. Despite the statement that Jubilee would have until March 1, 2009 to comply, the City continued to pursue charges against Ms. McKinney. On February 17, 2009, Ms. McKinney was tried in Beaumont Municipal Court for alleged fire code violations at one of Jubilee's community homes. A jury acquitted her of all charges.

32. In March 2009, in compliance with the City's demand, Jubilee closed Ms. Odom's and Mr. Hicks' homes. Mr. Hicks, Ms. Odom and the other residents were moved to the two apartments Jubilee leased at Eagles Landing.

33. Even after Ms. Odom and Mr. Hicks' homes closed, the City continued to pursue the remaining charges against Ms. McKinney, which were substantively identical to those on which she was acquitted, until April 2011, when it moved voluntarily to dismiss the remaining charges. The City has continued its prosecution of Jubilee's owner, Chris Ulasi.

34. In January 2011, the City began taking action against Ms. Odom's and Mr. Hicks' current homes at Eagles Landing, on grounds that the apartments also violated the City's one-half mile spacing restriction and the City's required fire safety measures. At least four city officials visited Eagles' Landing's rental office to meet with the on-site manager. At that meeting, the City demanded that Eagles Landing evict Jubilee and its residents, including Ms. Odom and Mr. Hicks.

35. In a subsequent meeting with the CEO of Eagles Landing's owner, the City threatened to declare the entire complex out of code if Jubilee and its residents were not evicted. To avert this result, on February 1, 2011, Eagles Landing issued a five-day notice of eviction to Jubilee and the residents at Eagles Landing, including Ms. Odom and Mr. Hicks, even though the owners did not believe there was a legal basis for eviction and believed that eviction under such circumstances would be discriminatory based on disability. Eagles Landing did not file an action to evict or otherwise take any further action on this notice.

### E. Attempts to Seek Reasonable Accommodations[1]

36. The City has maintained that persons with disabilities may seek a reasonable accommodation from the one-half mile spacing requirement by applying to the City's Zoning Board of Appeals ("Zoning Board") for a variance, and that they may seek reasonable accommodations of the City's fire safety requirements by applying to the City's Construction Board of Adjustment and Appeals ("Construction Board").

37. The City's website contains no information on the Construction Board, and the Construction Board is not referenced in City ordinances.

38. By City ordinance, the Zoning Board is prohibited from interpreting the City's zoning code in a manner that "grant[s] a special privilege to one property inconsistent with other properties or uses similarly situated." Beaumont Code § 28.02.005(e)(1)(B).

---

[1] As used in this Complaint, the term "reasonable accommodation" refers, collectively, to "reasonable accommodations" as used under the FHA and "reasonable modifications" as used in the implementing regulation for Title II of the ADA at 28 C.F.R. § 35.130(b)(7).

39. The City's ordinances contain no other mechanism for requesting a reasonable accommodation for zoning, building and fire code rules, regulations and decisions.

40. On February 24, 2011, Disability Rights Texas, the State-designated Protection and Advocacy agency for persons with intellectual or developmental disabilities, wrote to the Zoning Board on behalf of Ms. Odom and Mr. Hicks to request a variance of the City's spacing requirement as a reasonable accommodation that would allow Ms. Odom and Mr. Hicks to remain in their apartment units at Eagle's Landing. Disability Rights Texas also paid a $250 application fee for the Zoning Board's review.

41. The Zoning Board held a hearing on July 7, 2011 in response to Disability Rights Texas' request and application. However, during the hearing, the Zoning Board refused to consider Ms. Odom's and Mr. Hicks' reasonable accommodation request, with one Board member stating, "I don't know about reasonable accommodation making it into the zoning code." Instead, the Zoning Board limited its inquiry to whether Ms. Odom's and Mr. Hicks' homes were covered under the Community Homes Act's spacing requirement and concluded, erroneously, that they were. On this basis, the Zoning Board rejected the application.

42. On May 31, 2011, Disability Rights Texas submitted a reasonable accommodation request to the Construction Board to waive or relax certain of the City's fire safety requirements in order to allow Ms. Odom and Mr. Hicks to remain in their homes. Disability Rights Texas received no response to this request.

**Complaint – Page 11**

### F. HUD Complaints

43. Ms. Humphrey, Ms. Odom and Mr. Hicks timely filed discrimination complaints with the U.S. Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a).

44. Pursuant to 42 U.S.C. § 3610(e)(2), HUD referred these complaints to the U.S. Department of Justice.

### G. Other Aggrieved Persons

45. In addition to Ms. Humphrey, Ms. Odom and Mr. Hicks, the City's actions have affected numerous other persons with intellectual or developmental disabilities. The City has taken enforcement action against other service providers for persons with intellectual or developmental disabilities. These enforcement actions have prevented, and continue to prevent, community homes from opening in the City of Beaumont, despite high demand for such services.

46. The City has also taken action against companion care providers. The City compelled one provider to remove a resident with intellectual or developmental disabilities from her home; the resident ended up moving to a nursing home. Another companion care provider was forced, at her own expense, to obtain guardianship over the three adult women she serves because she could not afford to install a sprinkler system and other fire safety measures in her home.

## V. CLAIMS FOR RELIEF

### Count I: Violations of the Fair Housing Act

47. The allegations listed above are incorporated herein by reference.

48. Community homes, including those listed or referred to above, are "dwellings" within the meaning of 42 U.S.C. § 3602(b). The residents of these homes are persons with disabilities within the meaning of 42 U.S.C. § 3602(h).[2]

49. Defendant City of Beaumont's actions described above constitute:

    a. discrimination in the sale or rental, or otherwise making unavailable or denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1);

    b. discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(2);

    c. a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3)(B);

---

[2] Throughout this Complaint, the United States uses the term "disability" instead of "handicap." For purposes of the Act, the terms have the same meaning. See Helen L. v. DiDario, 46 F.3d 325, 330 n. 8 (3d Cir.) ("The change in nomenclature from 'handicap' to 'disability' reflects Congress' awareness that individuals with disabilities find the term 'handicapped' objectionable."), cert. denied sub nom., Pa. Sec'y of Pub. Welf. v. Idell S., 516 U.S. 813 (1995).

   e. interference with the rights of persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

 50. Defendant City of Beaumont acted intentionally, willfully, and in disregard for the rights of others.

 51. Defendant City of Beaumont's actions described above constitute a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, or a denial of rights protected by the Fair Housing Act to a group of persons, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

 52. Alissa Humphrey, Laura Odom, Todd Hicks, Jubilee Group Homes, Jubilee's prospective clients, and other persons and/or agencies who may have been the victims of Defendant City of Beaumont's discriminatory conduct are "aggrieved persons" within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B), and have suffered harm and damages as a result of Defendant's conduct.

<b><u>Count II: Violations of the Americans with Disabilities Act</u></b>

 53. The allegations listed above are incorporated herein by reference.

 54. Residents of community homes are "qualified individuals with disabilities" within the meaning of the ADA, 42 U.S.C. §§ 12102 and 12131(2) and 28 C.F.R. § 35.104.

 55. Defendant City of Beaumont is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

 56. The U.S. Department of Justice is the federal agency responsible for

administering and enforcing Titles II and V of the ADA, 42 U.S.C. §§ 12131-12134, 12203 and 28 C.F.R. Part 35, and is authorized to bring this action under 42 U.S.C. §§ 2000d-1 and 12133 and 29 U.S.C. § 794a(a)(2).  The Attorney General has commenced this action based on reasonable cause to believe that a person or group of persons has been discriminated against and that such discrimination raises issues of general public importance.  42 U.S.C. § 12133.  The United States seeks declaratory and injunctive relief and compensatory damages against the City.

57.     The United States has attempted informal resolution of this matter and has exercised good faith concerted efforts to seek the City of Beaumont's voluntary compliance with the ADA, without success.  All conditions precedent to the filing of this Complaint have occurred or been performed.

58.     Defendant City of Beaumont's actions described above:

   a.    constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35;

   b.    exclude individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities of a public entity on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a);

   c.    afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others, in violation of Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(1)(ii);

      d.      otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1)(vii);

      e.      fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7);

      f.      utilize methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(3);

      g.      exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g); and

      h.      interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA, in violation of Title V of the ADA, 42 U.S.C. § 12203(b).

59.    Defendant City of Beaumont acted intentionally, willfully, and in disregard for the rights of others.

60. Alissa Humphrey, Laura Odom, Todd Hicks, Jubilee Group Homes, Jubilee's prospective clients, and other persons and/or agencies who may have been the victims of Defendant City of Beaumont's discriminatory conduct are "aggrieved persons" under the ADA. 42 U.S.C. § 12203(c).

WHEREFORE, the United States prays that the Court enter an ORDER:

a. Declaring that the Defendant's actions violate the Fair Housing Act and the Americans with Disabilities Act and its implementing regulations;

b. Enjoining the Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing the City's one-half mile spacing rule for community homes for persons with intellectual or developmental disabilities;

c. Enjoining the Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing the City's fire, building and other codes in a manner that discriminates because of disability in violation of the Fair Housing Act and the Americans with Disabilities Act;

d. Enjoining the Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from requiring that community homes install sprinklers, except when required under applicable State regulations and/or the applicable provisions of Chapters 32 and 33 of the National Fire Prevention Association 101 Life Safety Code;

e. Ordering the Defendant to take all affirmative steps to ensure its compliance with the Fair Housing Act and Americans with Disabilities Act, including steps necessary to prevent

the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful housing practices as described herein;

      f.      Ordering the Defendant to take all affirmative steps to restore, as nearly as practicable, the victims of the Defendant's unlawful practices to the position they would have been in but for the Defendant's discriminatory conduct;

      g.      Awarding monetary damages, pursuant to the FHA, 42 U.S.C. § 3614(d)(1)(B), and the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35, to all aggrieved persons; and

      h.      Assessing a civil penalty against the Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

Dated May 26, 2015.

        Respectfully submitted,

        LORETTA E. LYNCH
        Attorney General

|  |  |
|---|---|
| | s/ Vanita Gupta |
| JOHN MALCOLM BALES | VANITA GUPTA |
| United States Attorney | Principal Deputy Assistant Attorney General |
| Eastern District of Texas | Civil Rights Division |
| | |
| s/ Michael Lockhart | s/ Steven H. Rosenbaum |
| MICHAEL LOCKHART | STEVEN H. ROSENBAUM |
| Assistant United States Attorney | Chief, Housing and Civil Enforcement |
| 350 Magnolia Avenue, Suite 150 |   Section |
| Beaumont, TX  77701 | |
| Tel:  (409) 839-2538 | s/ Max Lapertosa |
| E-mail:  Michael.Lockhart@usdoj.gov | SAMEENA SHINA MAJEED |
| | Acting Principal Deputy Chief |
| | MAX LAPERTOSA |
| | AURORA BRYANT |
| | Attorneys |
| | United States Department of Justice |
| | Housing and Civil Enforcement Section |
| | Civil Rights Division |
| | 950 Pennsylvania Ave. NW – G St. |
| | Washington, DC  20530 |
| | Tel:  (202) 305-1077 |
| | Fax:  (202) 514-1116 |
| | E-mail:  Max.Lapertosa@usdoj.gov |

**Complaint – Page 19**