IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| BEAUMONT | § | |
|     Plaintiff | § | |
| | § | CIVIL ACTION NO. 1:15CV201 |
|     vs. | § | |
| | § | JUDGE: RC |
| CITY OF BEAUMONT, TEXAS | § | MAGISTRATE: |
|     Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS**
**FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) & (7)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant City of Beaumont ("Defendant"), requesting this Court dismiss the claims within the Plaintiff's Complaint (Doc #1), pursuant to Western District Local Rule CV-12, and in part to Federal Rules of Civil Procedure 7, 8, 12(b)(1)(6), and 12(b)(7).  In support thereof, Defendant respectfully shows:

## BACKGROUND

1.     Plaintiff is the United States of America; Defendant is the City of Beaumont, Texas, ("City") a home-rule municipal corporation, organized, existing and operating under Art. 11, §5, Constitution of the State of Texas.

2.     Plaintiff filed its Complaint against the Defendant on May 26, 2015, for alleged violations of the Fair Housing Act and the Americans with Disabilities Act.  Specifically, Plaintiff's claims are based upon the City's requirement of one-half mile spacing between group homes, and the City's enforcement of International Building Code and International Fire Code requirement of residential sprinkler systems for group homes. (Doc #1).

3.      On July 1, 2015, Defendant filed its Unopposed Application for Extension of Time to Answer Complain with the Federal District Clerk for the Eastern District of Texas, Beaumont Division extending its deadline to respond to July 17, 2015 (Doc #4).

### GROUNDS FOR DISMISSAL (F. R. C. P. 12 (B)(6))

4.      Plaintiff's claims against the Defendant should be dismissed for Plaintiff's failure to state a claim upon which relief can be granted, for the following reasons:

I.      This Court lacks subject-matter jurisdiction because the decision of the City's Board of Adjustment became final when Plaintiff's alleged "aggrieved persons" failed to appeal and res judicata bars Plaintiff's FHA and ADA claims.

II.     Plaintiff fails to state a 42 U.S.C. §3404 (a) (f)(1)(2) (3)(B); 42 U.S.C. §3614(a)(d)(1)(B); 42 U.S.C. §3617; and  42 U.S.C. §3602 (i) cause of action upon which relief can be granted against the City for violation of the Fair Housing Act ("FHA").

        Plaintiff fails to state a 42 U.S.C. §12132 and 28 C.F.R. §35.130 et. seq.; and 42 U.S.C. §12203(b)(c) cause of action upon which relief can be granted against the City for violation of the Americans with Disabilities Act ("ADA")

III.    Plaintiff has not met all conditions precedent to the filing of its Complaint.

### GROUNDS FOR DISMISSAL (F. R. C. P. 12 (B)(7))

5.       Defendant respectfully submits this motion seeking an Order dismissing Plaintiff's claims for relief pursuant to Rule 12(b)(7) of the  Federal Rules of Civil Procedure. The State of Texas is a **required party** because Texas state law requires the same one-half mile spacing between group homes, and mandates the City to adopt the International Building Code and specifically mandates adoption of the International Fire Code or National Fire Protection Act. The International Fire Code requires residential sprinkler systems for group homes. The bases for this motion and authority in support is set forth in the accompanying Memorandum of Law.

## <u>STANDARD FOR FEDERAL RULE 12(b)(6) MOTION</u>

6.      Generally, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  In considering a motion to dismiss for failure to state a claim, the Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth.  *Id*. at 1950.  A complaint "must contain direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007).  "A formulaic recitation of the elements of a cause of action will not do."  *Id*. at 1964-65. A plaintiff's pleading obligation includes the twin requirements of fact-based pleading and plausibility. *Id.*  To avoid dismissal for failure to state a claim; however, a plaintiff "must plead specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions or legal conclusions'." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss under Rule 12(b) (6) from being granted. *Fernandez-Montes v. Allied Pilots Assoc.* 987 F.2d 278 (5th Cir. 1993).  Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Torres v. Victoria County*, 2009 U.S. Dist. LEXIS 16476 (S.D. Tex. Feb. 27, 2009) citing *Nationwide Bi-Weekly Admin. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).  In ruling on a motion to dismiss under *12(b)(6)*, the Court cannot look beyond the pleadings. *Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999).* The

pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).*

7.      "Although Fed. R. Civ. P. 12(b)(6) dismissal is ordinarily determined by whether the facts alleged in the complaint give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. *Dallas Bellagio Partners, LLC v. City of Dallas,* 2010 U.S. Dist. LEXIS 28480 (N.D. Tex. Mar. 15, 2010) citing *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Res judicata is an affirmative defense under Texas law. *Dallas Bellagio* at 8, citing *Joachim v. Travelers Ins. Co.*, 279 S.W.3d 812, 815 (Tex. App.--Amarillo 2008, pet. granted); See also *Hawk v. Williams,* 2003 U.S. Dist. LEXIS 20386, at *7, *11-*17 (N.D. Tex. Nov. 13, 2003) (Fitzwater Click for Enhanced Coverage Linking Searches, J.) (applying Texas law)."

## ARGUMENT AND AUTHORITIES

8.      Defendant incorporates verbatim herein its arguments and authorities and qualified immunity defenses set forth in its Original Answer made subject to this 12(b) Motion to Dismiss.

> **I.   This Court lacks subject-matter jurisdiction because the decision of the City's Board of Adjustment became final when Plaintiff's alleged "aggrieved persons" failed to appeal and res judicata bars Plaintiff's FHA and ADA claims.**

9.      "Res judicata, or claim preclusion, prevents the re-litigation of a claim or cause of action that has been finally adjudicated, as well as, related matters that with the use of diligence, should have been litigated in the prior suit." *Dallas Bellagio at 8*, citing *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Savs.,* 837 S.W.2d 627, 628-29 (Tex. 1992); *Britton v. Seale,* 81 F.3d 602, 606 (5th Cir. 1996). "The elements of res judicata under Texas law are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been

raised in the first action. *Dallas Bellagio at 8,* citing *Igal v. Brightstar Info. Tech. Group, Inc.,* 250 S.W.3d 78, 86 (Tex. 2008).

10.     "Texas courts would give the building official and the Board's fact-findings preclusive effect because the building official and the Board act in a judicial capacity and afford parties a full and fair opportunity to litigate." *Dallas Bellagio at 8,* citing *Igal,* 250 S.W.3d at 86-87 (citing *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642, 176 Ct. Cl. 1391 (1966)); *Rhoades v. Casey,* 196 F.3d 592, 602 (5th Cir. 1999). "The Supreme Court stated that preclusion doctrines apply to the fact findings of state administrative tribunals acting in a judicial capacity." *Dallas Bellagio at 8,* citing *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986); See also *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107-08, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991) (holding when a state or federal "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

11.     Under Texas law, the governing body of a municipality is authorized to regulate the use of buildings for business, industrial, residential, or other purposes. *Tex. Loc. Gov't Code § 211.003(a)(5).* The City of Beaumont Code of Ordinances prohibits the use or occupancy of a structure without a certificate of occupancy, Beaumont Code of Ordinances *Sec. 28.02.004,* "Certificate of Occupancy and Compliance."[1]  Any person, firm, corporation or entity that uses a structure in violation of any provision of Chapter 28 of the Beaumont Code of Ordinances, ("Zoning Ordinance") shall be subject to penalties, *Id. Sec. 28.02.001,* "Enforcement, Violations and Penalties.  A person who violates Chapter 28 shall be guilty of a misdemeanor and upon conviction shall be punished as provided in section *1.01.009* of the Beaumont Code of

---

[1] Formerly Beaumont Code of Ordinances Section 30-36.

Ordinances where each day such a violation exists shall constitute a separate offense. *Id. Sec. 29.02.001(b).* The City may bring a civil action against a person violating a provision of Chapter 28 to recover a civil penalty. *Id. Sec. 29.02.001(c).*

12.     Texas law allows the governing body of a municipality to provide for the appointment of a Board of Adjustment. *Tex. Loc. Gov't Code § 211.008(a).* The City has a Board of Adjustment.[2] Beaumont Code of Ordinances *Section 28.02.005.* The Board of Adjustment may hear and decide an appeal from a decision made by an administrative official in the enforcement of Subchapter A ("General Zoning Regulations") of Texas Local Government Code Chapter 211 or an ordinance adopted under that Subchapter.[3] Tex. Loc. Gov't Code § 211.009(a)(1). A certificate of occupancy and compliance shall first have been issued by the building official of the City certifying that the use, building, structure, lot or newly erected, enlarged or structurally altered part of a building or structure complies with the building code, fire code, zoning code, subdivision code and other applicable codes of the City. *Id. Sec. 28.02.004(a).*   A person aggrieved by the building official's decision may appeal to the Board of Adjustment. *Tex. Loc. Gov't Code § 211.010(a)(1).* The appeal must be filed within a reasonable time as determined by the rules of the Board. *Id.* § 211.010(b).

13.     Any person aggrieved by the decision or action of the board of adjustment may appeal the decision or action of the Board of Adjustment by filing a petition for same in a court of competent jurisdiction, setting forth that such decision is illegal in whole or in part, and specifying the grounds for the alleged illegality. Such petition shall be filed with the court within ten (10) days from the day the decision is filed in the board's office. *Id.  §  11.011(a)(b)(1);*

---

[2] Plaintiff refers to the City's Board of Adjustment as "Zoning Board of Appeals", "Zoning Board", "Construction Board of Adjustment", and Construction Board" throughout its Complaint.
[3] Texas Local Gov't Code, Title 7, Regulation of Land Use, Structures, Businesses and Related Activities, Subtitle A. Municipal Regulatory Authority, Chapter 211. Municipal Regulatory Authority, Subchapter A. General Zoning Regulations.

Beaumont Code of Ordinances, *Section 28.02.005(k)[4]*.  "On presentation of the petition, the court may grant a writ of certiorari directed to the Board to review the Board's decision. *Tex. Loc. Gov't Code §211.011(c)*. On application and after notice to the Board, the court may grant an order restraining enforcement of the Board's order if due cause is shown. *Id*. At the hearing, the court may take evidence or appoint a referee to take evidence that is determined to be necessary for the proper disposition of the matter. *Id*. *§ 211.011(e)*. The court applies a specific standard of review -- ultimate question is whether the Board's decision was legal.. *Dallas Bellagio Partners at 8,* citing *City of Lubbock v. Bownds*, 623 S.W.2d 752, 755-56 (Tex. App.--Amarillo 1981, no pet.) (citing *Currey v. Kimple*, 577 S.W.2d 508, 512 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.)), *disapproved of on other grounds, Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 (Tex. 1993)".

14.    Plaintiff's alleged aggrieved persons, Laura Odom and Todd Hicks, retained Disability Rights Texas to file an appeal of City zoning and building code violations issued on or about January 25, 2011, to Jubilee Group Homes, Inc., Ms. Odom' and Mr. Hicks' service provider agency, regarding Apartment Units 814 & 815, 3980 Major Drive, Beaumont, Texas.   The building code violations involved the use and occupancy of buildings or structures as provided by the City's adoption of the International Building Code and International Fire Code.[5] The basis for Plaintiff's lawsuit is the revocation, renewal or issuance of certificates of occupancy for alleged "aggrieved persons"[6] resulting from the City's enforcement of the State of Texas location requirement[7] and alleged restrictive City fire code requirements. (Doc #1, pg. 1 ¶ 1).

---

[4] *Sec. Section 28.02.005(k)* references, *"ten (10) days from the date the board renders it decision."*
[5] Plaintiff asserts in its paragraph 49 (c) of its Complaint that the City refused to make reasonable accommodation to afford a person an equal opportunity to use and enjoy a dwelling in violation of FHA, 42 U.S.C. § 3604(f)(3)(B).
[6] "aggrieved persons" as listed in Plaintiff's Complaint, Doc #1, pg. 14, ¶ 52, pg. 17, ¶ 60.
[7]  Texas Human Resource Code, Sec. 123.008.

Laura Odom, Todd Hicks, Disability Rights Texas, and Jubilee Group Homes, Inc., failed to pursue those claims and the decision of the City official and Board of Adjustment became final. Therefore, res judicata bars Plaintiff's claims for these persons. *Dallas Bellagio Partners, LLC v. City of Dallas,* 2010 U.S. Dist. LEXIS 28480 (N.D. Tex. Mar. 15, 2010). As a result, this Court lacks subject-matter jurisdiction to consider Plaintiff's Complaint.

## II. Plaintiff fails to state a cause of action upon which relief can be granted against the City for violation of the Fair Housing Act ("FHA") and American with Disabilities Act ("ADA").

15.     "Both the FHAA and the ADA prohibit governmental entities from implementing or enforcing housing policies in a discriminatory manner against persons with disabilities. The FHA makes it unlawful 'to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap.' *42 U.S.C. § 3604(f)(1)*. Similarly, the ADA states 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.' *42 U.S.C. § 12132*. Both statutes require 'that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities.'" *Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573, 2003 U.S. App. LEXIS 25227, 11 Accom. Disabilities Dec. (CCH) P11-077, 15 Am. Disabilities Cas. (BNA) 32 (2d Cir. Conn. 2003)* citing Reg'l *Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 45 (2d. Cir), cert. denied, 537 U.S. 813, 154 L. Ed. 2d 16, 123 S. Ct. 74 (2002).  To establish discrimination under either the FHAA or the ADA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation. *See id. at 48.*

**A.      Intentional Discrimination (Disparate Treatment).**

16.      Defendant contends that Plaintiff has not provided sufficient facts to support its allegation that the City intentionally discriminated against the alleged "aggrieved persons" or that the City's actions resulted in disparate treatment of the alleged "aggrieved persons". Disparate treatment involves a showing of intentional discrimination, provable via either direct or circumstantial evidence *Kormoczy v. Sec'y, U.S. Dep't of Housing and Urban Dev., 53 F.3d 821, 823-24 (7th Cir. 1995).* Plaintiff's Complaint does not suggest ill intent or improper assumptions about the disabled on the part of the City of Beaumont. Therefore Plaintiff has failed to state a claim for intentional discrimination (disparate treatment).

**B.      Disparate Impact.**

17.      Disparate impact, unlike disparate treatment, does not require that a person be treated less favorably because of a protected characteristic, but rather calls for proof that a facially neutral policy unjustifiably falls more harshly on a protected group than on others. *Nikolich v. Arlington Heights,* 870 F. Supp. 2d 556,  (N.D. Ill. 2012) citing *Raytheon Co. v. Hernandez, 540 U.S. 44, 52, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003).* No showing of actual intent to discriminate is required. *Id.* "When establishing that a challenged practice has a significantly adverse or disproportionate impact on a protected group, a plaintiff must prove the practice "actually or predictably results in ... discrimination*." Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 2003 U.S. App. LEXIS 25227, 11 Accom. Disabilities Dec. (CCH) P11-077, 15 Am. Disabilities Cas. (BNA) 32 (2d Cir. Conn. 2003) citing *Hack v. President & Fellows of Yale Coll., 237 F.3d 81, 90 (2d Cir. 2000) (quoting Town of Huntington, 844 F.2d at 934).* A plaintiff has not met its burden if it merely raises an inference of discriminatory impact. *Gamble v. City of Escondido, 104 F.3d 300, 306 (9th Cir. 1997).* "The basis for a successful disparate impact claim involves a

comparison between two groups - those affected and those unaffected by the facially neutral policy. This comparison must reveal that although neutral, the policy in question imposes a 'significantly adverse or disproportionate impact' on a protected group of individuals." *Tsombanidis* at 575. "Statistical evidence is also normally used in cases involving fair housing disparate impact claims." *Tsombanidis* at 576.

18.     Similar to the plaintiffs in *Tsombanidis,* Plaintiff, did not present any statistical information nor did it show the City's enforcement of the State's location requirement or enforcement of the City's building or fire codes actually or predictably created a shortage of housing for the alleged "affected persons" in the community. Although there may be cases where statistics are not necessary, there must be some analytical mechanism to determine disproportionate impact. *Tsombanidis* at 576.  "Whether using statistics or some other analytical method, plaintiffs must also utilize the appropriate comparison groups. They must first identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy." *Tsombanidis* at 576, 577.  The Court of Appeals in *Tsombanidis* further held that the district court likewise erred by, "merely comparing handicapped and non-handicapped persons". *Tsombanidis* at 577.

19.     Plaintiff has not demonstrated its disparate impact claim is supported by some type of analytical mechanism or statistical information. Its alleged disparate impact claim is supported by only conclusory allegations. *Guidry at* 281.  Therefore, Plaintiff has failed to state a claim for disparate impact.

## C.     Reasonable Accommodation.

20.     "Under the FHAA and the ADA, a governmental entity engages in a discriminatory practice if it refuses to make a 'reasonable accommodation' to 'rules, policies, practices or

services when such accommodation may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling.' *42 U.S.C. § 3604(f)(3)(B)*; See also *42 U.S.C. § 12131 (2)* ('The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'). *Tsombanidis* at 576.[8]

21.     In *Hemisphere Bldg. Co. v. Village of Richton Park,* 171 F.3d 437, (7th Cir. Ill. 1999) the appellate court reviewed an FHA, §§ 3604(f)(3)(B) claims brought by a developer against a municipality regarding its zoning decision.  In *Hemisphere Bldg. Co.*, a developer wanted to construct two four-unit residences, specifically designed to meet the needs of wheelchair-bound persons and requested a rezone from R-1 to R-4.  The Village turned down the developer's application, but offered to rezone the proposed lot to R-3. Such offer would have required the developer to scale back his planned construction from 8 units to 6.  The developer believed that with fewer units he would have to increase the price of each unit by $10,000.00 and determined he could not find buyers among the handicapped at that higher price, so the developer turned down the Village's offer.  In requesting accommodation under FHA, the developer argued that discrimination is inferred because the nature of the land uses in the vicinity of the proposed lot consisted of an apartment house across the street with 25 dwelling units and a nearby small housing development zoned R-2 with 8.67 dwelling units.  The developer argued that the allowed density of the adjacent residential units was against the interest of handicapped people in being able to obtain housing suitable for their special needs at the lowest possible price.  The court in *Hemisphere Bldg. Co.* responded to the developer's above-referenced argument by

---

[8] Plaintiff refers to "reasonable accommodation" collectively under the FHA and ADA. Doc #1, pg. 10, footnote 1.

applying a common sense approach to reasonable accommodation by holding, "That would be an unwieldy analytical task for a court to undertake, and the practical result might well be that builders for the handicapped could simply pay no attention to zoning ordinances--a result that, as pointed out in *Thornton v. City of Allegan, 863 F. Supp. 504, 510 (W.D. Mich. 1993)*, would cast the Fair Housing Amendments Act in the unlikely role of an engine for the destruction of zoning. Zoning may be good or bad, but the FHAA is not the charter of its abolition." *Hemisphere Bldg. Co.* at 439.

22.     The *Hemisphere Bldg. Co.* court further reasoned that, "To require consideration of handicapped people's financial situation would allow developers of housing for the handicapped to ignore not only the zoning laws, but also a local building code that increased the cost of construction, or for that matter a minimum wage law, or regulations for the safety of construction workers. Anything that makes housing more expensive hurts handicapped people; but it would be **absurd** to think that the FHAA overrides all local regulation of home construction.  The *Hemisphere Bldg. Co.* court further held that, "The result that we have called absurd is avoided by confining the duty of reasonable accommodation in "rules, policies, practices, or services" to rules, policies, etc. that hurt handicapped people *by reason of their handicap,* rather than that hurt them solely by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Hemisphere Bldg. Co.* at 440, citing *Erdman v. City of Fort Atkinson, supra; Brandt v. Village of Chebanse, supra; Salute v. Stratford Greens Garden Apartments, supra, 136 F.3d at 301-02*; cf. *Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 604 (4th Cir. 1997)*.

23.     *The Hemisphere Bldg. Co.* court concluded that, "But a zoning ordinance that merely raises the cost of housing hurts everyone who would prefer to pay less and forgo whatever

benefits the higher cost confers, and so need not be waived for the handicapped. *Brandt v. Village of Chebanse, supra, 82 F.3d at 175.* The difference between eliminating a discrimination against a group and compelling a subsidy for that group is familiar from cases of reasonable accommodation or disparate impact under other antidiscrimination statutes." *Hemisphere Bldg. Co.* citing *Southeastern Community College v. Davis, 442 U.S. 397, 407-12, 60 L. Ed. 2d 980, 99 S. Ct. 2361 (1979)*; *Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 669 (7th Cir. 1998)*; *Matthews v. Commonwealth Edison Co., supra, 128 F.3d at 1196*; *Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1051 (7th Cir. 1996)*; *Finnegan v. Trans World Airlines, Inc., 967 F.2d 1161, 1163 (7th Cir. 1992)*; *Terrell v. USAir, 132 F.3d 621, 627 (11th Cir. 1998)*; *Gaines v. Runyon, 107 F.3d 1171, 1178 (6th Cir. 1997)*; *Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995).*

24.     The Hemisphere *Bldg. Co.* court's final conclusion address directly the issue in this case regarding the building and fire code safety requirements concerning the installation and cost of sprinkler systems[9], "We thus **disapprove** the district court cases in this circuit which have held that a city must, if requested by a handicapped person, waive its requirements **for the installation of sprinklers** because the requirements make homes more expensive for the handicapped--as for everyone." (emphasis added) *Hemisphere Bldg. Co.* at 441, citing *Proviso Ass'n of Retarded Citizens v. Village of Westchester, 914 F. Supp. 1555, 1561-63 (N.D. Ill. 1996)*; *Alliance for the Mentally Ill v. City of Naperville, 923 F. Supp. 1057, 1078 (N.D. Ill. 1996).*

25.     The Plaintiff contends in paragraph 18 of its Complaint the following:

> 18.     *Automatic sprinkler systems cost around $30,000 and require annual maintenance and servicing.  As such, they are cost-prohibitive for many service providers and companion care providers.  Furthermore, because of the continuing service expense*

---

[9] Plaintiff's Complaint, Doc #1, pgs. 5-6, ¶ 18.

*of sprinklers, landlords may refuse to allow them to be installed or may demand their removal at the conclusion of the tenancy, which is also cost-prohibitive for many service providers. Sprinklers may also be technically infeasible to install in apartments in multifamily buildings. Accordingly, this rule prohibits or significantly limits the ability of community homes for persons with intellectual or developmental disabilities to operate in Beaumont.*

26.   In a Southern of District Texas case, *Smithers v. City of Corpus Christi, (*S.D. Tex. Mar. 19, 2008), the court addressed the issue of Plaintiff, an independent life/treatment center home ("Safe Place") with approximately 16 transient tenants, violation of the City's R-1B, "one-family-dwelling zoning district".[10] The Smithers Court reasoned that, "In order to prove a violation of the Fair Housing Act, plaintiffs must prove that the requested accommodation is "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." *42 U.S.C. § 3604(f)(3)(B)*.  This element limits the accommodation duty so that not every rule that inconveniences the disabled must be changed. The statute requires only accommodations necessary to ameliorate the effect of plaintiffs' disability so that they may compete equally with the non-disabled in the housing market. *Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 603-04 (4th Cir.1997)* ("[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'")." *Smithers at pg. 2.* The Plaintiff in this case has not plead sufficient facts to demonstrate that allowing people to live within the ½ spacing requirement or a waiver of the building and/or fire code safety regulations is necessary to ameliorate the effect of the "aggrieved persons" disability. In fact, Plaintiff acknowledges that safety requirements under certain unidentified State regulations and applicable provisions of

---

[10] After an inspection, the city determined that Safe Place qualified as a boarding house within the zoning ordinance.

Chapters 32 and 33 of the National Fire Prevention Association 101 Life Code are acceptable. (Doc #1, pg. 17, Prayer, ¶ d.).[11]

27.     The *Smithers* court reasoned it is mindful that, 'the economics of group living arrangement[s] often require a critical mass of residents in order to make feasible the type of alternative living arrangement that the Fair Housing Act was designed to encourage.' *Smithers* at pg. 3 citing *Elderhaven, 98 F.3d at 179.* But the Smithers court further explained that, "**However,** plaintiff demonstrated only that a large number of residents may be necessary to make the particularly large house at 326 Meldo Park **economically feasible.** Such a showing is **insufficient** under the FHA. *Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park, 171 F.3d 437, 440 (7th Cir.1999)* (FHA bars discrimination against 'handicapped people by reason of their handicap, rather than . . . by virtue of what they have in common with other people, such as a limited amount of money to spend on housing.')." (emphasis added) *Smithers* at pg. 3. As noted above, Plaintiff in this case makes the same "economically feasible" argument in its Complaint, asserting, "*cost-prohibitive for many service providers and companion care providers*" and "*Sprinklers may also be technically infeasible to install in apartments in multifamily buildings*". (Doc #1, pgs. 5-6, ¶ 18).  Therefore, Plaintiff's request for accommodation claim under FHA and ADA against the City is based on economic feasibility and is insufficient under FHA and ADA and must fail.

### III.     Plaintiff has not met all conditions precedent to the filing its Complaint.

28.     Plaintiff has not met all conditions precedent to the filing of its Complaint because "To prevail on any reasonable accommodation claim plaintiffs must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures used to

[11] Although Plaintiff has been informed that the City of Beaumont adopted the International Fire Code, ("IFC"), Plaintiff mandates that the City follow the National Fire Prevention Association rules ("NFPA") and references the NFPA to support its claims against the City.

adjust the neutral policy in question." *Tsombanidis* at 578 and 579, citing *Oxford House-C v. City of St. Louis, 77 F.3d 249, 253 (8th Cir. 1996)*. The City has no record of any reasonable accommodation request applications submitted on behalf of Ms. Humphrey or any other persons, except as noted herein, to notify the City that he/she/it seeks an exemption or variance from the ½ mile location requirement or IBC/IFC safety regulations. As a result, the City was not provided the opportunity to accommodate any such requests. Therefore, Since Plaintiff has not met all conditions precedent to the filing of its Complaint, Plaintiff's reasonable accommodation claims should be dismissed.

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (F. R. C. P. 12(B)(7))

29.      The purpose of an F.R.C.P. 12(b)(7) motion to dismiss is to challenge the Plaintiff's failure to join a required party under F.R.C.P. 19. That rule requires joinder of a party whose absence would prevent the existing parties from being granted complete relief, to protect the legitimate interests of an absent party and to avoid duplicate litigation. *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 634 (7th Cir. 2009) and *U.S. v. Rose*, 34 F. 3d 901, 908 (9th Cir. 1194).  The State of Texas is a **required party**.

30.      Complete relief is not possible unless and until the State of Texas is joined as a party.

   **A.**      (1) As to Plaintiff's claim that the one-half mile separation requirement for group homes violates the FHA and ADA, the City's requirement is identical to and based upon state law, to wit: Section 123.008, Texas Health and Safety Code: "a community home may not be established within one-half mile of an existing community home."  This requirement was codified in 1991, but importantly, was amended in the most recent legislative session to specifically include the name of the state department for administering Chapter 123 – "Department of Aging and Disability Services "("DADS").  The 2015 amendment clearly expresses the Legislature's intention that the one-half mile separation requirement remain in

effect. Although Plaintiff inexplicably alleges otherwise, the City's separation requirement is identical to the State's requirement, and the City is bound and obligated to recognize and enforce Section 123.008.

(2)     Under Section 123.004(1)(d), each of the group homes in the City are certified by and subject to inspection by the Texas agency, DADS.  It cannot then be argued that Chapter 123 does not apply to such group homes.

(3)     The State of Texas has a legally protected interest related to this suit, the recognition and enforcement of the separation requirement contained in Section 123.008 of the Health and Safety Code.  Complete relief for Plaintiff is not possible unless and until the State is joined as a party to address the issues related to the one-half mile separation requirement. F.R.C.P. 19(a)(1)(B) mandates the State's addition as a party defendant.

(4)     The State of Texas' interests cannot be and are not adequately protected by the City, because the State's interests in protecting the enforceability and validity of the one-half mile separation requirement are state-wide.  It cannot be reasonably argued that an adverse decision in this case would not impact the requirement throughout the State.  Further, the State of Texas would offer arguments in addition to and different than those of the City, due to the statewide importance of the requirement in question.  The State as a party offers a necessary element to the case.  F.R.C.P. 19(a)(1)(B)(i); *Salt River Project Agric. Imprv. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012).

(5)     Further, absent the State of Texas in this case, the City would be left subject to substantial risk of inconsistent obligations.  If the Plaintiff were to prevail in its claims against the City's one-half mile separation requirement, the State statute would still require the City to enforce the same separation distance for group homes.  *Winn-Dixie Stores, v. Dolgencorp, LLC,*

746 F.3d 1008, 1039 (11th Cir. 2014; *School Dist. Of Pontiac v. Secretary of the U.S. Dept. of Educ.*, 584 F. 3d 253, 266 (6th Cir. 2009); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F. 3d 399, 411 (3d Cir. 1993).

**B.**      (1) As to Plaintiff's claims that enforcement of the International Fire Code requirements of residential sprinkler systems for group homes, the State of Texas is a **required party**.   Texas Local Government Code §214.216 mandates that Texas cities adopt the International Building Code, and the City has done so.  The International Building Code applies to all commercial buildings in a municipality for which construction begins on or after January 1, 2006, or to any alteration, remodeling, enlargement or repair of the commercial building.  The statute defines "commercial" to mean "a building for the use or occupation of people for (A) a public purpose or economic gain; . . .   Local Gov. Code §214.211(5).  Once a structure is defined as "commercial under the state-mandated International Building Code, a sprinkler system is required.  Under the City's building codes, every structure, except for a one or two family dwelling requires a sprinkler system.  Since a group home is defined by the state-mandated code as "commercial," a sprinkler system is required.  The City has classified group homes as Residential 3 (R-3), thereby requiring only residential sprinkling.  This complies with the International Building Code, yet is much less extensive and expensive for group homes than other commercial structures.

(2)      The State of Texas has a legally protected interest related to this suit, the recognition and enforcement of the International Building Code, its definition of group homes as commercial, and its express requirement that all commercial structures have sprinkler systems. Complete relief for Plaintiff is not possible unless and until the State is joined as a party to address these issues. So, F.R.C.P. 19(a)(1)(B).

(3)     The State of Texas' interests cannot be and are not adequately protected by the City, because the State's interests in protecting the enforceability and validity of the International Building Code and its express requirements one- state-wide.  Any adverse decision in this case against the City would necessarily impact the requirement throughout the State.  Further, the State of Texas would offer arguments in addition to and different than those of the City, due to the statewide importance of the requirement in question to public safety.  The State as a party offers a necessary element to the case.  F.R.C.P. 19(a)(1)(B)(i); *Salt River Project Agric. Imprv. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012).

(4)     Further, absent the State of Texas in this case, the City would be left subject to substantial risk of inconsistent obligations.  If the Plaintiff were to prevail in its claims against the City's enforcement of express provisions required by the state-mandated International Building Code, the State statute be in direct conflict, and would still require the City to enforce sprinkler requirements for group homes.  *Winn-Dixie Stores, v. Dolgencorp, LLC,* 746 F.3d 1008, 1039 (11th Cir. 2014; *School Dist. Of Pontiac v. Secretary of the U.S. Dept. of Educ.*, 584 F. 3d 253, 266 (6th Cir. 2009); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F. 3d 399, 411 (3d Cir. 1993).

(5)     It is feasible to join the State of Texas as a party.  The State of Texas is subject to service of process through the office of the Attorney General, and joinder will not affect subject matter jurisdiction.  Accordingly, the State must be joined as a party.  F.R.C.P. 19(a).  Further, no party will be prejudiced by joinder of the State of Texas; the opposite is true, as judicial economy and efficiency will be served.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff has failed to state any claim against the Defendant upon which relief may be granted, and Defendant prays that this Motion to

Dismiss be granted and that Plaintiff's claims be dismissed. Further, Defendant prays that the Court order the State of Texas to be added as a party defendant, and that if such joinder fails, Plaintiff's claims be dismissed.  Defendant respectfully prays for other and further relief to which is may be justly entitled.

Respectfully submitted,

**McKamie Krueger, LLP**
941 Proton Road
San Antonio, Texas 78258
210.546.2122 Telephone
210.546.2130 Facsimile

By:  /s/: William M. McKamie_____
William M. McKamie
State Bar No. 13686800
mick@mckamiekrueger.com

Adolfo Ruiz
State Bar No. 17385600
adolfo@mckamiekrueger.com

Barbara L. Quirk
State Bar No. 16436750
barbara@mckamiekrueger.com

Charles H. Sierra
State Bar No. 18345300
charles@mckamiekrueger.com

Adrian A. Spears, II
State Bar No. 24049318
adrian@mckamiekrueger.com

**Attorneys for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 17, 2015, a copy of **Defendant's Motion to Dismiss Federal Rules of Civil Procedure 12(B)(6) & (7)** was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing upon the following.

John Malcom Bales
*United States Attorney*
Eastern District of Texas

Michael Lockhart
Michael.lockhart@usdog.gov
Assistant United States Attorney
United States Attorney's Office- Beaumont
350 Magnolia Avenue, Suite 150
Beaumont, Texas 77701
409.839.2538
409.839.2643

Loretta E. Lynch
*Attorney General*
Vanita Gupta
*Principal Deputy Assistant Attorney General*
*Civil Rights Division*

Steven H. Rosenbaum
*Chief, Housing and Civil Enforcement Section*

Sameena Shina Majeed
*Acting Principal Deputy Chief*

Max Lapertosa
Max.lapertosa@usdoj.gov
Aurora Bryant
Aurora.bryant@usdoj.gov
Attorneys
United States Department of Justice - 006
Civil Rights Division
1800 G Street NW, Room 7119
Washington, DC 20006
and
950 Pennsylvania Ave. NW- G St.
Washington, DC 20530
202.305.1077                                    /s/: William M. McKamie
202.514.1116                                    WILLIAM M. McKAMIE