IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 1-15-CV-201 |
| | § | |
| CITY OF BEAUMONT | § | |

### ORDER GRANTING PETITIONERS' MOTION TO INTERVENE

Alissa Humphrey, Laura Odom, and Todd Hicks (the "Petitioners") have filed an Opposed Motion for Leave to Intervene, seeking to intervene in this action pursuant to Federal Rule of Civil Procedure 24. (Doc. No. 9) Defendant City of Beaumont (the "City") opposes this motion, arguing that Petitioners do not meet the statutory requirements for intervention and that Petitioners' claims are barred under a number of affirmative defenses. (Doc. No. 13.)

After reviewing these arguments, the undersigned finds that Petitioners meet the requirements for intervention under Rule 24. Further, is not apparent on the face of Petitioners' proposed Complaint in Intervention (Doc. No. 9, Ex. A) that the City's affirmative defenses bar the Petitioners' claims. Therefore, the Petitioners' Opposed Motion for Leave to Intervene (Doc. No. 9) is **GRANTED**.

### I. Background[1]

Community homes are meant to provide housing to persons with intellectual and developmental disabilities so they may better integrate with the community at large. The City has enacted ordinances and fire codes applicable to these community homes. The City's ordinances include a requirement that all community homes, regardless of size or status, may not be within one-half mile of any other community homes. Further, the City has adopted a fire code

---

1. These facts are alleged in Petitioners' Complaint in Intervention.

1

that requires the installation of sprinkler systems in all community homes regardless of size. Such sprinkler systems can cost around $30,000.

Petitioners, Alissa Humphrey, Todd Hicks, and Laura Odom, are all intellectually and developmentally disabled and were, at one time, all residents of community homes. The City, citing its one-half mile spacing rule and its fire code, required the closure of the community homes in which the Petitioners lived. Alissa Humphrey never appealed the closing of her community home, but currently lives in a community home that violates the City's one-mile spacing requirement. Todd Hicks and Laura Odom appealed to the City's Board of Adjustment, seeking a variance to the City's ordinances. Hicks' and Odom's requests were rejected on July 19, 2011. Humphrey, Hicks, and Odom all timely filed complaints with the U.S. Department of Housing and Urban Development ("HUD"). After reviewing the complaints, HUD referred them to the U.S. Department of Justice, which filed the present suit on behalf of the United States on May 26, 2015 under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). On August 5, 2015, the Petitioners filed the present motion to intervene in the United States' suit.

## II. Legal Standard – Intervention Under Rule 24

Federal Rule of Civil Procedure 24 provides two bases of intervention applicable here: intervention as of right, and permissive intervention. FED. R. CIV. P. 24(a). Under Rule 24(a)(1), a party who files a timely motion to intervene is entitled to intervention as of right if the party either:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

2

FED. R. CIV. P. 24(a). Permissive intervention under Rule 24(b) is appropriate where the party "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b).

A motion to intervene under Rule 24 must also be filed in a timely manner. Diaz v. S. Drilling Corp., 427 F.2d 1118, 1125 (5th Cir. 1970). The Fifth Circuit employs a four-factor test to determine whether a motion to intervene was timely:

> Factor 1. The length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene.
>
> Factor 2. The extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.
>
> Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.
>
> Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

Ross v. Marshall, 426 F.3d 745, 754 (5th Cir. 2005). The timeliness inquiry "should not be used as a tool of retribution to punish the tardy would-be intervenor, but rather should serve as a guard against prejudicing the original parties by the failure to apply sooner." Id. (internal quotations omitted).

The purpose of allowing interventions by non-parties under Rule 24 is to "prevent a multiplicity of suits where common questions of law or fact are involved." Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990); accord Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Department of the Interior, 100 F.3d 837, 844 (10th Cir. 1996). "Although the movant bears the burden of establishing its right

3

to intervene, Rule 24 is to be liberally construed. Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." Texas v. United States, 15-40333, 2015 WL 6876054, at *1 (5th Cir. Nov. 9, 2015) (internal citations and quotations omitted); Warheit v. Osten, 57 F.R.D. 629, 630 (E.D. Mich. 1973) ("[I]t is well understood that the rule should be read to allow intervention in as many situations as possible."). As with all the Federal Rules of Civil Procedure, Rule 24 must "be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1.

Motions to intervene may be denied if the proposed intervenors do not have a viable claim. See, e.g., Yazdchi v. Am. Honda Fin. Corp., CIV.A. 3:05CV0737L, 2005 WL 1943611, at *3 (N.D. Tex. Aug. 12, 2005) (denying motion to intervene where intervenor's claims were barred by res judicata); Fund For Animals, Inc. v. Norton, 322 F.3d 728, 733–34 (D.C. Cir. 2003) (examining the original plaintiff's complaint to determine whether a prospective intervenor had standing); Nat'l Parks Conservation Ass'n v. U.S. E.P.A., 759 F.3d 969, 974 (8th Cir. 2014) (same). A motion to intervene should be denied if the court does not have the power to grant the relief sought by Petitioners. In re Deepwater Horizon, 546 F. App'x 502, 506 (5th Cir. 2013). Courts employ a standard similar to that of a 12(b)(6) motion to dismiss, accepting as true any material allegations in motion to intervene. See Nat'l Parks Conservation Ass'n, 759 F.3d at 973–74. Federal Rule of Civil Procedure 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When ruling on a motion to intervene, the court must examine the plaintiff's complaint and the

allegations made in the petitioner's motion to intervene to determine if the intervenor's claims are plausible on the face of the pleadings. Nat'l Parks, 759 F.3d at 973. The court must accept as true all well-pleaded facts and review them in the light most favorable to intervenor. Texas, 2015 WL 6876054 at *1.

### III. Analysis

#### A. Intervention Under Rule 24

1. Timeliness

Applying the *Ross* factors to this case, the Petitioners' motion is timely. See 426 F.3d at 754. The motion for leave to intervene was filed on August 5, 2015, a little over two months after the United States filed its complaint (Doc. No. 1) in this action. At that time, no significant legal proceedings had occurred in this case—the parties had not begun discovery or participated in a Rule 16 scheduling conference, and the only other responsive pleading was the City's motion to dismiss, which was filed just a few weeks earlier on July 17, 2015. (Doc. No. 5.) Many courts have found motions to intervene timely when they were filed much later than two months after the start of the suit. Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1125-26 (5th Cir. 1970) (holding that a Rule 24(a) intervention as of right was timely where there had been "no legally significant proceedings" other than the completion of discovery and intervention would not cause any delay in the process of the overall litigation), cert. denied, 400 U.S. 878 (1970); see also Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) (holding motion to intervene timely "only seven months after [the plaintiff] filed his original complaint, three months after the government filed its motion to dismiss, and before any discovery had begun."). The undersigned finds that the Petitioners filed their motion within a reasonable time after they

5

learned of their interest in this litigation, and the City will suffer no prejudice if the Petitioners are permitted to intervene at this time.

The City appears to argue that the Petitioners' motion is not "timely" because the Petitioners' claims are barred by res judicata and the statute of limitations. (Doc. No. 13, at 5.) However, such considerations are not relevant to the timeliness factors utilized in Fifth Circuit cases. See Ross, 426 F.3d 754 (listing Rule 24 timeliness factors). Timeliness under Rule 24 is measured by the time that passes between the filing of the original action and the intervenor's motion, not the amount of time that has passed since the intervenor's rights were first allegedly violated (*i.e.,* when the limitations period would have begun). See Id. (stating that timeliness under Rule 24 depends upon an intervenor's delay relative to "the [intervenor's] receipt of actual or constructive knowledge of his *interest in the litigation* and the filing of his motion for intervention") (emphasis added). The Petitioners' motion for leave to intervene is timely under Rule 24.

2. Intervention as of Right Under Rule 24(a)

The Petitioners are entitled to intervention as of right, because they have an unconditional right to intervene under a federal statute, namely 42 U.S.C. § 3614(e).[2] The FHA provides the Attorney General with authority to enforce rights granted by the statute through civil actions in federal court. 42 U.S.C. § 3614(a), (b). Subsection (e) states that:

> Upon timely application, any person may intervene in a civil action commenced by the Attorney General under subsection (a) or (b) of this section which involves

---

2. The Petitioners also claim that 42 U.S.C. § 3614(e) grants them a *conditional* right to intervene for purposes of permissive intervention. (Doc. No. 9, at 13.) However, previous district courts that have addressed intervention pursuant to 42 U.S.C. § 3614(e) have found that the statute creates an "unconditional" right to intervene, and the undersigned agrees with this characterization of the statute's language. Marsten Apartments, Inc., 175 F.R.D. at 269 (noting that the language of 42 U.S.C. § 3614(e) creates an unconditional right to intervene, not a conditional right to intervene.)

>an alleged discriminatory housing practice with respect to which such person is an aggrieved person . . . .

42 U.S.C. § 3614(e). As many district courts have recognized, this statute creates an "unconditional right to intervene" as contemplated by Federal Rule of Civil Procedure 24(a)(1). See, e.g., United States v. Koch, 8:03-cv-406, 2006 WL 1720489, at *2 (D. Neb. June 20, 2006); United States v. Marsten Apartments, Inc., 175 F.R.D. 265, 269 (E.D. Mich. 1997) ("the proposed intervenors have an unconditional right to intervene under 3614(e), and are thus entitled to intervene by right pursuant to Rule 24(a)"); United States v. Henry, 519 F. Supp. 2d 618, 621 (E.D. Va. 2007).

The Petitioners in this case properly seek intervention pursuant to 42 U.S.C. § 3614(e). First, this case is a civil action brought by the Attorney General under the enforcement authority granted by 42 U.S.C. § 3614(a). (Doc. No. 1, at 14.) Second, the United States' complaint alleges discriminatory housing practices in violation of the FHA. (Doc. No. 1, at 13, 14.) Finally, the Petitioners in this case are "aggrieved persons" as contemplated by the statute. See 42 U.S.C. § 3614(e). The FHA defines "aggrieved persons" as any person who either "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory practice that is about to occur." 42 U.S.C. § 3602(i). In their Complaint in Intervention, the Petitioners clearly claim to have been injured by the City's alleged discriminatory housing practices. (See generally Doc. No. 9, Ex. A.) Moreover, the United States specifically alleged in its complaint that the Petitioners are "aggrieved persons" who have been injured by the City's conduct. (Doc. No. 1, at 14.); see United States v. St. Bernard Par., CIV.A. 12-0321, 2012 WL 3062748, at *3 (E.D. La. July 26, 2012) (referring to allegations in the original plaintiff's complaint to determine whether the intervenors would qualify as "aggrieved persons" under 42 U.S.C. § 3602(i)). Because the definition of "aggrieved

persons" includes anyone who "claims" to have been injured by a discriminatory housing practice, the allegations in the Petitioners' Complaint in Intervention and the United States' Complaint are sufficient to establish that the Petitioners meet the statutory definition of "aggrieved persons." Therefore, the Petitioners have an unconditional right to intervene pursuant to a federal statute, and intervention is appropriate under Rule 24(a)(1).

The City's response argues that the Petitioners do not have an unconditional right to intervene under 42 U.S.C. § 3614(e) because they are not aggrieved persons under the FHA. (Doc. No. 13, at 5.) It is not clear which arguments the City offers to support this position. Nowhere does the City mention the statutory definition of an "aggrieved person" or dispute whether the Petitioners "claim[]" to be injured by a discriminatory housing practice. See 42 U.S.C. § 3602(i). It appears the City's position is that the Petitioners do not meet the definition of "aggrieved persons" because their claims are barred by res judicata and the statute of limitations. (Doc. No. 13, at 4–10.) However, the City's argument puts the cart before the horse. The statute clearly requires only that an intervenor "claims" to have been injured. See 42 U.S.C. § 3602(i). Whether the intervenor will ultimately prevail on the merits is irrelevant. Because the City does not dispute whether the Petitioners *claim* to have been injured by the alleged discriminatory conduct at issue in this case, its arguments are without merit.

3. Permissive Intervention Under Rule 24(b)

Alternatively, the Petitioners are entitled to permissive intervention. In addition to the timeliness requirement discussed above, Federal Rule of Civil Procedure 24(b) gives the court discretion to permit Petitioners to intervene if (1) they have "a claim or defense that shares with the main action a common question of law or fact[,]" and (2) "the intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b).

8

First, the Petitioners' Complaint in Intervention contains claims that share common questions of law and fact with the original complaint filed by the United States. See FED. R. CIV. P. 24(b)(1)(B). In fact, the Petitioners' Complaint in Intervention asserts, virtually verbatim, the same claims for relief as the United States. (See Doc. Nos. 1, at 11–15; 9, at 13–17.) Both complaints allege the same discriminatory conduct: the City's one-half mile spacing requirement, and the City's fire code requirements. (See Doc. Nos. 1, at 1; 9, at 2.) Second, the Petitioners' intervention will not unduly delay or prejudice the adjudication of the original parties' rights. See FED. R. CIV. P. 24(b)(3). The United States does not oppose Petitioners' intervention, so the undersigned need only determine if the intervention will unduly delay or prejudice the adjudication of the City's rights. The City has been well aware of the Petitioners' desire for intervention throughout this litigation. Their motion for leave to intervene was filed less than one month after the City filed its motion to dismiss. The undersigned has already recommended denying the City's motion to dismiss. (Doc. No. 32.) Petitioners were present at the Rule 16 management conference and the discovery process has just commenced. The Petitioners would have been involved in that discovery process whether they would have been allowed to intervene or not. Therefore, the undersigned concludes that the City will not be unduly prejudiced and that an adjudication of its rights will not be unduly delayed. Therefore, the Petitioners are also entitled to permissive intervention under Rule 24(b).

## B. The City's Affirmative Defenses

The City has argued that Petitioners' claims in intervention are barred due to res judicata, the statute of limitations, and failure to satisfy conditions precedent.[3] A motion to intervene

---

[3]. The City also argues that the Petitioners failed to exhaust their administrative remedies. (Doc. No. 25, at 1–3.) The City raised this argument for the first time in its sur-reply in Opposition to Motion for Leave to Intervene. (Doc. No. 25.) "Legal arguments raised for the first time in a sur-reply, like arguments raised for the first

should be denied if the court does not have the power to grant the relief sought by Petitioners. In re Deepwater Horizon, 546 F. App'x at 506. This includes circumstances in which the intervenors do not have a viable claim because affirmative defenses, such as res judicata, bar the claims asserted. See, e.g., Yazdchi, 2005 WL 1943611 at *3 (denying motion to intervene where the intervenor's claims were barred by res judicata). Res judicata and statute of limitations are affirmative defenses. FED. R. CIV. P. 8(c)(1); Torns v. Miss. Dept. of Corr., 301 F. App'x 386, 387 (5th Cir. 2008). To successfully oppose Petitioners' intervention, the City must prove that its affirmative defenses clearly bar the Petitioners' claims on the face of the pleadings. See Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986) (stating the standard for a 12(b)(6) motion to dismiss). The court looks to Petitioners' motion to intervene, the responsive pleadings, and the United States' complaint when deciding whether the City's affirmative defenses bar the Petitioners' claims. See Nat'l Parks, 459 F.3d at 973. These pleadings are construed in the light most favorable to the Petitioners. See id. For the following reasons, the undersigned concludes that the City has not shown that its affirmative defenses appear clearly on the face of the pleadings.

1. Res Judicata

The City argues that res judicata bars the Petitioners' claims. As both the City and the Petitioners acknowledge, this res judicata defense incorporates substantially the same arguments raised in the City's motion to dismiss (Doc. No. 5). (Doc. No. 19, at 5; 25, at 4.) The

---

time in a reply, are waived . . . . A sur-reply, when allowed, is limited to addressing only new arguments raised for the first time by the opposing party in their reply briefing and not included in the original motion." Branch v. CEMEX, Inc., No. H–11–1953, 2012 WL 2357280, at *9 (S.D.Tex. June 20, 2012) (internal citations and quotations omitted). Because the City raised its exhaustion defense for the first time in its sur-reply, and it is not offered in response to any new argument raised in the replies by the Petitioners or the United States, the undersigned does not address the merits of this defense.

10

undersigned rejected the City's res judicata defense as applied to the United States' complaint, and the same conclusion is warranted here. (Doc. No. 32.)

A motion to intervene may be denied if res judicata bars the intervenors' claims. See, e.g., Yazdchi v. Am. Honda Fin. Corp., CIV.A. 3:05CV0737L, 2005 WL 1943611, at *3 (N.D. Tex. Aug. 12, 2005). A federal court must give the same res judicata effect to the Zoning Board's decision that would be given by a Texas state court. Prod. Supply Co. v. Fry Steel Inc., 74 F.3d 76, 78 (5th Cir. 1996). Under Texas law, res judicata, or claim preclusion, "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav., 837 S.W.2d 627, 628 (Tex. 1992). "Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second cause of action based on the same claims as were raised or could have been raised in the first action." In re D.W.G., 391 S.W.3d 154, 166 (Tex. App.—San Antonio 2012, no pet.).

The City argues that Todd Hicks and Laura Odom both requested variances to its ordinances from its Board of Adjustment, which rejected these requests. (Doc. No. 13, at 9.) According to the City, Texas law would give res judicata effect to the Zoning Board's decision. (Doc. No. 13, at 9.)

The City has failed to show that all elements of its res judicata defense appear clearly on the face of the Petitioners' pleadings. First, Petitioner Humphrey's claims do not appear to be barred. Humphrey does not claim to have asked the Board of Adjustment for a variance. If the Board of Adjustment never adjudicated Humphrey's claims, her claims cannot be barred by res judicata. While Petitioners Todd Hicks and Laura Odom do allege that they sought a variance

11

from the Board of Adjustment, it is not clear on the face of the pleadings that the Board's decision bars their claims. The pleadings do not include the basis for the Board of Adjustment's decision in order for the undersigned to determine the scope of its preclusive effects. There is no evidence in the pleadings that the same claims at issue in this case—discrimination under federal civil rights statutes—were raised and decided in the Board of Adjustment's decision. See In re D.W.G., 391 S.W.3d at 166. Moreover, it is not clear from the pleadings that the Board of Adjustment is a court of competent jurisdiction. In any event, res judicata is a fact-intensive defense that is better suited for a motion for summary judgment. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005). Without more evidence of the Board of Adjustment's decision, the undersigned cannot conclude that Texas law would give the Board's decision preclusive effect over the claims at issue in this case.

2. Statute of Limitations

Finally, the City argues that the applicable statute of limitations bars Petitioners' claims. The Fifth Circuit has affirmed denials of motions to intervene when the complaint in intervention asserts only claims that are time barred. See State Farm Mut. Auto. Ins. Co. ex rel. Holley v. United States, CIV.A. 02-1799, 2003 WL 1873089, at *3 (E.D. La. Apr. 10, 2003) (citing cases); see also Powell v. Brantly Helicopter Corp., 396 F. Supp. 646, 652 (E.D. Tex. 1975).

Since Petitioners' claims are based on both the FHA and the ADA, the undersigned considers each statutory claim in turn. The FHA requires private parties to file suit within two years "after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). This limitations period does not include "any time during which an administrative proceeding under this title was pending with respect to a complaint or charge." 42 U.S.C. § 3613(a)(1)(B). One such "administrative proceeding" that could toll the limitations

period is the filing of a complaint with HUD. 42 U.S.C § 3610(a)(1) (allowing an aggrieved person to file a complaint within one year of the "alleged discriminatory housing practice" with HUD, which then investigates the alleged complaint).

Petitioners' FHA claims are not time-barred. Petitioners' motion alleges that they all timely filed HUD complaints, which would have tolled the limitations period. (Doc. No. 9, at 11.) Further, Petitioners allege that HUD referred these complaints to the U.S. Department of Justice, which then filed the current suit. (Doc. No. 9, at 11.) None of the pleadings up to this point describe the nature of HUD's involvement or the duration of its proceedings. It is not clear whether, after removing the period of time during which the HUD proceedings were in progress, the statute of limitations for Petitioners' FHA claims has run. Therefore, the undersigned concludes that it is not clear on the face of Petitioners' motion to intervene that the statute of limitations has run on their FHA claims.

The ADA does not have a defined limitations period, so the undersigned must "borrow the most analogous period from state law." Frame v. City of Arlington, 657 F.3d 215, 237 (5th Cir. 2011). For claims under the ADA, Texas's two-year personal-injury statute of limitations is the most analogous. Id. The statute of limitations for an ADA cause of action begins to run "from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Holmes v. Tex. A&M Univ., 145 F.3d 681, 684 (5th Cir. 1998).

It does appear from the face of the pleadings that the *initial* violations of the Petitioners' rights under the ADA occurred outside the two-year limitations period. Because the Petitioners' motion was filed on August 5, 2015, they must allege a violation of the ADA that occurred after August 5, 2013 to prevent dismissal on limitations grounds. While the pleadings do not state the

specific date on which Petitioner Humphrey suffered a compensable injury, the facts alleged demonstrate that the initial injury must have occurred sometime before September 30, 2012.[4] Petitioners Hicks and Odom likewise suffered an alleged initial injury beyond the two-year limitations period. The Petitioners' motion states that Hicks and Odom's request for a variance was rejected, at the latest, on July 19, 2011—the date on which the Planning Manager for the City (Stephen Richardson) allegedly informed Hicks' and Odom that their accommodation request was denied. Thus, the Petitioners' initial injuries are outside the two-year statute of limitations period.

However, it does not appear from the face of the pleadings that the Petitioners' claims are time-barred, because of the continuing violation doctrine. The continuing violation doctrine allows a plaintiff's claims to survive the statute of limitations where the pleadings allege "a series of related acts, one or more of which falls within the limitations period[,]" as opposed to "discrete discriminatory acts . . . ." Henson v. Bell Helicopter Textron, Inc., 128 F. App'x 387, 391 (5th Cir. 2005). In addition to the injuries discussed above, all three Petitioners have specifically alleged that their current community homes are in violation of the City's ordinances and risk further adverse action by the City. (Doc. No. 9, Ex. A, at 7, 9.) The Petitioners' Complaint in Intervention alleges that Humphrey's community home is within one-half mile of another community home, and Hicks' and Odom's community home potentially violates the City's spacing requirement and fire code ordinances. It is not clear from the face of the

---

4. According to Petitioners' Complaint in Intervention, Humphrey was forced to leave her home because the City ordered it closed for not complying with the one-half mile spacing and the sprinkler system requirements. (Doc. No. 9, at 6.) This action by the City is a sufficient "injury" to start the limitations period for Humphrey's ADA claim. See Holmes, 145 F.3d at 684. Petitioners' motion to intervene does not state the exact date on which Ms. Humphrey was removed from her home. However, the motion does allege that she was transferred to a nursing facility for thirteen months after being removed from her home by the City, and she then moved into another community home in October 2013. (Doc. No. 9, Ex. A, at 7.) Thus, the latest date that Humphrey could have been forced to move from her home would be thirteen months before October 2013, which is September 30, 2012.

pleadings that the City will not enforce its ordinances in the near future, and Petitioners continue to live under that threat. The City characterizes these threats as "vague claims of risk" that cannot constitute a continuing violation. (Doc. No. 25, at 6.) However, evidentiary development through discovery is necessary to determine whether and to what extent the Petitioners' current community homes face adverse action by the City as part of a series of related acts, one of which falls within the limitations period. Therefore, it is not clear from the face of the pleadings that the Petitioners have only alleged discrete discriminatory acts, such that their claims are time-barred and not saved by the continuing violation doctrine.

    3.  <u>Failure to Satisfy Conditions Precedent</u>

The City also argues that the Petitioners' reasonable-accommodation claims under the FHA and ADA are barred because they have not satisfied all "conditions precedent" prior to filing their Complaint in Intervention. (Doc. No. 13, at 10.) This argument is indistinguishable in all material respects from the same argument asserted in the City's motion to dismiss. (Doc. No. 5.) The undersigned rejected that argument as applied to the United States' complaint, and the same conclusion is warranted here. (Doc. No. 32.)

The City argues that the Petitioners did not provide the City with an opportunity to accommodate their needs as disabled persons. (Doc. No. 13, at 10.) As with the City's motion to dismiss, the City characterizes this requirement as a "condition precedent" to filing a reasonable-accommodation claim. (Doc. Nos. 5, at 16; 13, at 10.) Again, the City has provided no cases supporting its argument that a plaintiff must establish in the *pleadings* that a request for accommodation was made and denied, or that this requirement is a "condition precedent" to filing suit. The Petitioners have alleged that "[a]ll conditions precedent to the filing of this complaint have occurred or been performed" and have explained in detail their attempts to

request an accommodation from the City. (Doc. No. 9, Ex. A, 9, 13.) While it is true that the Petitioners will need to prove these allegations to prevail at trial, the City has provided no basis for finding that these allegations are insufficient at the pleading stage. Therefore, the Petitioners' reasonable-accommodation claims are not barred on the face of the pleadings.

### IV. Conclusion

The Petitioners satisfy the requirements for intervention under Federal Rule of Civil Procedure 24(b), and none of the City's affirmative defenses defeat the Petitioners' claims on the face of the pleadings. Therefore, the Petitioners' motion is **GRANTED**.[5] (Doc. No. 9.)

SIGNED this 24th day of November, 2015.

_____
Zack Hawthorn
United States Magistrate Judge

---

5. Also pending before the court is the Petitioners' "Unopposed Motion for Leave to Exceed Page Limit for Petitioners' Reply in Support of Motion to Intervene." (Doc. No. 18.) As the motion is unopposed, the undersigned **GRANTS** the motion.