IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:15-cv-00201 |
| v. | § | |
| | § | JUDGE:  Ron Clark |
| CITY OF BEAUMONT, TEXAS | § | MAGISTRATE: |
| | § | |
| Defendant. | § | |

## COMPLAINT IN INTERVENION FOR ALISSA HUMPHREY, LAURA ODOM, AND TODD HICKS

Pursuant to Federal Rule of Civil Procedure 24, Ms. Alissa Humphrey, by and through her legal guardian Barbara Beauchamp, Ms. Laura Odom, and Mr. Todd Hicks respectfully file this complaint in intervention in the United States Civil Action No. 1:15CV201.  By this filing, Ms. Humphrey, Ms. Odom, and Mr. Hicks appear in this case as plaintiffs to the claims filed by Plaintiff United States of America against Defendant City of Beaumont, Texas, seeking declaratory and injunctive relief to prevent further discrimination on the basis of their disabilities as well as compensatory damages and attorney fees.  Intervenors Ms. Humphrey, Ms. Odom, and Mr. Hicks allege as follows:

### I. INTRODUCTION

1.     Alissa Humphrey, Laura Odom, and Todd Hicks bring this complaint in intervention for declaratory and injunctive relief, monetary damages and attorney fees against the City of Beaumont, Texas (the "City"), under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. §§ 3601-3631, and Titles II and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, 12203, as well as Title II's

implementing regulation, 28 C.F.R. Part 35. The City discriminated against Ms. Humphrey, Ms. Odom, and Mr. Hicks on the basis of their disability by preventing or inhibiting the operation of small community homes for persons with intellectual or developmental disabilities, as follows: 1) by imposing a one-half mile spacing requirement for such homes, and 2) by imposing restrictive fire code requirements that are not imposed on similarly situated property uses and that exceed the State of Texas' requirements for community homes. Relying on these discriminatory policies, the City forced several community homes to close, including those occupied by the Intervenors, and forced residents to move to a nursing home.

## II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action and may grant the relief sought herein pursuant to 28 U.S.C. § 1331; 42 U.S.C. § 3613(a); 42 U.S.C. §§ 12133 and 12134; and 28 U.S.C. § 2201 and 2202.[1]

3.      Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged herein occurred in this district and because the Defendant is located there.

## III. PARTIES

4.      Plaintiff is the United States of America who brought suit against the Defendant City of Beaumont for declaratory and injunctive relief, monetary damages and civil penalties against Defendant under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3631, and Titles II and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, 12203, as well as 28 C.F.R. Part 35

5.       Defendant is the City of Beaumont, a unit of government organized under the Constitution and laws of the State of Texas. *See* Tex. Local Gov't Code § 5.004. Under the City's

---

[1] The United States of America also commenced this action under 28 U.S.C. § 1345 in addition to the statutory provisions referenced by Intervenors.

Home Rule Charter, the City has the capacity to sue or be sued. Charter of the City of Beaumont, Tex., Art. 1, Sec. 2.  The City – including but not limited to the City Council, the Community Development Advisory Committee, the Fire Department, and the Zoning Board (Zoning) – is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35.

6.      Intervenors Ms. Humphrey, Ms. Odom, and Ms. Hicks are part of the charging parties in this case, and are individuals damaged as a result of the Defendant's unlawful conduct.

### IV. Factual Allegations

#### A. Community Homes for Persons with Intellectual or Developmental Disabilities

7.      The State of Texas ("Texas"), through Medicaid, provides community residential services for persons with intellectual or developmental disabilities through small group homes and apartments ("community homes"). The Intervenors resided in community homes and received Medicaid funding through an HCS waiver program. Texas receives federal financial assistance to run the HCS waiver program as codified by 42 U.S.C.A. § 1396-1.

8.      Texas, through the Department of Aging and Disability Services, regulates, certifies and oversees community homes run by service providers for persons with intellectual or developmental disabilities. Oversight of the community homes includes regular inspections to ensure compliance with Medicaid requirements and state regulations, including fire safety requirements.

#### B. Beaumont's Spacing Requirement

9.      The City of Beaumont enforces a one-half mile spacing rule for community homes through its Community Development Department.

10.     Beaumont applies the spacing requirement to community homes of all sizes, including homes and/or apartments with three or fewer residents.

11.     Beaumont's one-half mile spacing rule applies only to community homes for persons with disabilities. Beaumont's Zoning Code allows three unrelated persons to live together as of right in residential districts; there is no spacing rule for any housing for persons without disabilities.

12.     State regulations governing community homes do not impose any specific spacing requirements. In fact, the regulations promote integration of community homes with housing for persons without disabilities. Specifically, the regulations state that an individual or applicant is ineligible for HCS Program services if he or she resides in a dwelling that creates "a residential area distinguishable from other areas primarily occupied by persons who do not require routine support services because of a disability," or where "most of the residents of the dwellings are persons with an intellectual disability." 40 Tex. Admin. Code. § 9.155(a)(5)(H).

13.     The one-half mile spacing requirement is not codified in the City's ordinances. Beaumont based this rule on the Texas Community Homes for Disabled Persons Location Act, which Beaumont erroneously held as establishing a mandatory spacing rule for small community homes. Tex. Hum. Res. Code §§ 123.001-123.010.

C. **Beaumont's Fire Code Requirements**

14.     The City of Beaumont states that it has adopted the 2009 International Building Code, a large portion of which deals with fire prevention. Thus, the City of Beaumont has required community homes for persons with intellectual or developmental disabilities to install various fire safety measures, including: automatic sprinkler systems; commercial ventilated kitchen hoods with sprinkler systems; lighted exit signs on every bedroom and exit door; "hard-wired" fire alarm

systems with a direct connection to the fire department; key boxes; and lowered windows. Community homes of all sizes, even an individual apartment unit where only one person with a disability may live, must comply with these fire safety requirements.

15.    Beaumont does not impose similar fire safety measures on single-family residences and apartments occupied by persons who are not related and who do not have intellectual or developmental disabilities. The City also does not impose these requirements for in-home child care providers that serve up to 12 children.

16.    Beaumont's requirements for community homes are more stringent than those required by the State of Texas. The State requires community homes serving persons with disabilities to conduct fire drills and to have smoke detectors and alarms, among other requirements. Additionally, Texas requires community homes with four persons to have a sprinkler system, but only if fire drills indicate that residents cannot evacuate within three minutes with staff assistance.

17.    The City did cease requiring community homes to have most of these fire safety measures in 2013, but continued to require automatic sprinkler systems for all community homes, regardless of home's size or the residents' abilities.

18.    Automatic sprinkler systems are expensive, approximately $30,000, and require annual maintenance and servicing. Thus, automatic sprinkler systems are cost-prohibitive for many service providers and companion care providers. Furthermore, because of the high maintenance cost of the sprinkler systems, landlords may refuse to allow them to be installed or may demand their removal at the conclusion of a lease, which is also cost-prohibitive for many service providers. Sprinkler systems may also be difficult to install in apartments homes in multifamily buildings. Therefore, the requirement of automatic sprinkler systems prohibits or significantly

limits the ability of community homes for persons with intellectual or developmental disabilities to operate in Beaumont.

### D. Beaumont's Enforcement of the Half-Mile and Fire Safety Requirements

19. As a result of Beaumont's fire safety requirements and the half-mile spacing rule, several community homes have been forced to close and residents with disabilities have been forced to move, either to institutional settings or out of Beaumont.

#### 1. Alissa Humphrey

20. Ms. Humphrey, an individual with intellectual, developmental, and physical disabilities, was a resident of Breakwater Bay Apartments in Beaumont, Texas. Ms. Humphrey lived with two other persons with intellectual or developmental disabilities in a first-floor, accessible unit operated by Texas HCS, a service provider agency located in Beaumont, TX that is licensed by the Texas Department of Aging and Disability Services ("DADS"). On June 12, 2012, officials from the City of Beaumont conducted a surprise inspection of her apartment.

21. Because the Texas HCS was unable to implement the required fire safety features, including a sprinkler system, a fire alarm system, and a commercial ventilated hood, and Ms. Humphrey's community home was within one-half mile of another community home, the City ordered the community home closed. Ms. Humphrey and her roommates were told to vacate the apartment within 30 days.

22. Ms. Humphrey did not want to move out of her home of seven years. Her mother asked the City's Fire Marshal to let Ms. Humphrey stay in her home. The Fire Marshal, Jack Mattox, responded that Ms. Humphrey "was not supposed to be in that apartment" due to her disabilities, or words to that effect.

23.     Texas HCS was unable to find another community home for Ms. Humphrey that met the demands of the City of Beaumont. Consequently, Ms. Humphrey was transferred to an institutional nursing facility in Beaumont, where she lived for 13 months.

24.     Ms. Humphrey did not want to live in a nursing facility, a segregated environment in which she lacked the opportunity to interact with non-disabled persons in the community. She was unable to move her furniture and other personal items into the nursing home, including a waterbed that she used to prevent bedsores. Additionally, while in the nursing home, Ms. Humphrey was unable to attend her community-based day program.

25.     In October 2013, Disability Rights Texas helped Ms. Humphrey move into an existing four-person community home in Beaumont. However, this home is also within one-half mile of another small group home for persons with disabilities. Therefore, Ms. Humphrey's current home is under threat of closure due to Beaumont's one-half mile spacing rule.

### 2.  Laura Odom and Todd Hicks

26.     Mr. Hicks and Ms. Odom are persons with intellectual or developmental disabilities who each live in a three-bedroom apartment at Eagles Landing, an apartment complex in Beaumont, TX located at 3950 Major Drive. Each apartment unit is a community home that is operated by Jubilee Group Homes, Inc. ("Jubilee"), a service provider agency located in Beaumont, TX that is licensed by the Texas Department of Aging and Disability Services ("DADS"). Both Ms. Odom and Mr. Hicks have lived at Eagles Landing since March 2009.

27.     Prior to residing in Eagles Landing, Mr. Hicks lived with two other residents with disabilities in a single-family home in Beaumont. Ms. Odom also lived in a single-family home in Beaumont. Both residences were staffed and operated by Jubilee.

28.     On November 21, 2008, the City's Community Development Department notified Jubilee that Ms. Odom's and Mr. Hicks' community homes violated the City's one-half mile spacing requirement because each was within one-half mile of another community home. The City demanded that the "violation" be corrected by December 9, 2008.

29.     Furthermore, in 2008 the City filed multiple criminal complaints and charges in Beaumont Municipal Court against Jubilee's Program Director, Arvy McKinney, for alleged fire code violations at four community homes operated by Jubilee, including Mr. Odom's and Mr. Hicks' homes.

30.     On December 9, 2008, after the City filed multiple identical criminal complaints against Jubilee's program director for alleged fire code violations, the City Fire Department threatened to disconnect all utilities from Jubilee's community homes, including the homes were Ms. Odom and Mr. Hicks reside, if the alleged violations were not resolved within five days.

31.     On December 19, 2008, the City informed Jubilee that it would have until March 1, 2009 either to close these community homes or to bring them into compliance with "the codes of the City of Beaumont." The City stated that because of the spacing rule, it would not be possible to continue operating these homes as homes for persons with disabilities.

32.     In order to comply with the City's demand, Jubilee closed Ms. Odom's and Mr. Hicks' homes in March 2009. Mr. Hicks and Ms. Odom were moved to the two apartments Jubilee leased at Eagles Landing.

33.     On January 25, 2011, Ms. Lois Balka, Code and Enforcement Officer for the City of Beaumont, inspected the current homes of Mr. Hicks and Ms. Odom at Eagles Landing.

34.     After the inspection, Ms. Balka wrote a letter to Jubilee stating that the homes of Mr. Hicks and Ms. Odom were being illegally operated as a business. Ms. Balka alleged that the

City of Beaumont never received a certificate of occupancy to operate the homes as businesses in an area that was zoned as GCMD (General Commercial-Multiple Family Dwelling). Ms. Balka further contended that the zoning district prohibited business activity without a certificate of occupancy.

35.     The City also alleged that Ms. Odom's and Mr. Hicks' homes at Eagles Landing violated the City's one half mile spacing restriction and the required fire safety requirements.

36.     City officials met with the on-site manager at Eagles Landing and demanded that Eagles Landing evict Jubilee and its residents, including Ms. Odom and Mr. Hicks. In a subsequent meeting with the CEO of Eagles Landing, the City threatened to declare the entire complex out of code if Jubilee and its residents were not evicted. Eagles Landing complied and on February 1, 2011, gave Jubilee and the residents at Eagles Landing, including Mr. Hicks and Ms. Odom, a five-day notice of eviction, though an eviction suit has yet to be filed.

### E.  Attempts to Seek Reasonable Accommodation

37.     The City of Beaumont maintained that persons with disabilities may seek a reasonable accommodation from the one-half mile spacing requirement by applying to the Zoning Board of Adjustments of the City of Beaumont ("Zoning Board") for a variance. Additionally, reasonable accommodations of the City's fire safety rules may be sought by application to the City's Construction Zoning Board and Appeals ("Construction Board").

38.     The City's website simply lists the Construction Board, but provides no further information on how to contact the Construction Board or request a reasonable accommodation. The Construction Board is not referenced in City ordinances.

39.     The City of Beaumont Code of Ordinances prohibits the Zoning Board from granting an appeal if the resulting interpretation of the City's zoning code "grant[s] a special

privilege to one property inconsistent with other properties or uses similarly situated." Beaumont

Code § 28.02.005(e)(1)(B).

40.     The City's ordinances contain no other mechanism for requesting a reasonable

accommodation for zoning, building and fire code rules, regulations, and decisions.

41.     On February 24, 2011, Disability Rights Texas ("DRTx"), the State-designated

Protection and Advocacy agency for persons with intellectual or developmental disabilities, on

behalf of Mr. Hicks and Ms. Odom, appealed Zoning Board the determinations of the City to the

Zoning Board. DRTx also made a request for a variance of the City's spacing requirement as a

reasonable accommodation under the FHA on their behalf in the appeal.

42.     On May 2, 2011, DRTx, on behalf of Mr. Hicks and Ms. Odom, submitted a "Board

of Adjustment Application Form City of Beaumont (Codes Section 30-37)" as part of an

application for a variance and appeal.   In this application, DRTx renewed the reasonable

accommodation request under the FHA that was previously submitted on February 24, 2011.

43.     On June 10, 2011, the City of Beaumont acknowledged that the previously filed

appeal/variance was timely filed with the Zoning Board.

44.      The Zoning Board held a hearing on July 7, 2011 in response to DRTx's request

and application. However, the Zoning Board refused to consider Ms. Odom's and Mr. Hicks'

reasonable accommodation request. Instead, the Board's inquiry was limited to whether Ms.

Odom's and Mr. Hicks' homes were covered under the Community Homes Act's spacing

requirement and erroneously determined that their homes were covered by the Act. On this basis,

the Zoning Board rejected the application.

45.     In a letter dated on July 8, 2011, Stephen C. Richardson, Planning Manager for the

City of Beaumont, indicated to DRTx that the variance was denied.

46.     Additionally, on July 8, 2011, DRTx requested that the Zoning Board rule on the reasonable accommodation request under the FHA.

47.     On July 19, 2011, Mr. Richardson stated that the accommodation request under the FHA was denied as part of the variance.

48.     On May 31, 2011, DRTx submitted a reasonable accommodation request to the Construction Board to waive or relax the City's fire safety regulations in order to allow Ms. Odom and Mr. Hicks to remain in their homes. DRTx has not received a response to this request.

### F.  HUD Complaints

49.     Ms. Humphrey, Ms. Odom and Mr. Hicks timely filed discrimination complaints with the U.S. Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a).

50.     Pursuant to 42 U.S.C. § 3610(e)(2), HUD referred these complaints to the U.S. Department of Justice.

## V. CLAIMS FOR RELIEF

### A.  Violations of the Fair Housing Act

51.     The allegations listed above are incorporated herein by reference.

52.     Community homes, including those listed above, are "dwellings" within the meaning of 42 U.S.C. § 3602(b). The residents of these homes are persons with disabilities within the meaning of 42 U.S.C. § 3602(h).[2]

53.     Defendant City of Beaumont's actions described above constitute:

---

[2] The Fair Housing Act uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). This document uses the term "disability," which is more generally accepted.

a.      discrimination in the sale or rental, or otherwise making unavailable or

denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C § 3604(f)(1);

b.      discrimination in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection with such a dwelling

because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(2);

c.      a refusal to make reasonable accommodations in rules, policies, practices,

or services when such accommodations may be necessary to afford a person an equal

opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. §

3604(f)(3)(B);

d.      making requests for accommodations in rules, policies, practices, or

services would be futile under 42 U.S.C. § 3604(f)(3)(B);

e.      interference with the rights of persons in the exercise or enjoyment of, or on

account of their having exercised or enjoyed, or on account of their having aided or

encouraged persons with disabilities in the exercise or enjoyment of rights granted or

protected by the FHA, in violation of 42 U.S.C. § 3617.

54.    Defendant City of Beaumont acted intentionally, willfully, and in disregard for the

rights of others.

55.    Defendant City of Beaumont's actions described above constitute a pattern or

practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, or a denial

of rights protected by the Fair Housing Act to a group of persons, which denial raises an issue of

general public importance, in violation of 42 U.S.C. § 3614(a).

56.     Intervenors Alissa Humphrey, Laura Odom, and Todd Hicks are "aggrieved persons' within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B), and have suffered harm and damages as a result of Defendant's conduct.

57.     Ms. Humphrey, Ms. Odom, and Mr. Hicks are also qualified individuals with disabilities within the mean of 42 U.S.C. § 3602(h)(1).

**B.     <u>Violations of Title II of the Americans with Disabilities Act</u>**

58.     The allegations listed above are incorporated herein by reference.

59.     Residents of community homes are "qualified individuals with disabilities" within the meaning of the ADA, 42 U.S.C. §§ 12102 and 12131(2) and 28 C.F.R. § 35.104.

60.     Defendant City of Beaumont is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

61.     Intervenors Ms. Humphrey, Ms. Odom, and Mr. Hicks are authorized to bring this action under 42 U.S.C. § 12133 and 29 U.S.C. § 794a(a)(2). The Intervenors seek declaratory and injunctive relief and compensatory damages against the City.

62.     The Intervenors and Plaintiff DOJ have unsuccessfully attempted informal resolution of this matter and have exercised good faith concerted efforts to seek the City of Beaumont's voluntary compliance with the ADA.  All conditions precedent to the filing of this complaint have occurred or been performed.

63.     Defendant City of Beaumont's actions described above:

a.     constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35;

b.     exclude individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities of a public entity on the basis of

disability, in violation of Title II of the ADA. 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a);

c.      afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others, in violation of Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(1)(ii);

d.      otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1)(vii);

e.      fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7);

f.      making requests for modifications in policies, practices, or procedures would be futile under the ADA futile;

g.      utilize methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(3);

h.      exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g); and

i.      interfere with an individual in the exercise or enjoyment of, or on account

of his or her having exercised or enjoyed, or on account of his or her having aided or

encouraged any other individual in the exercise or enjoyment of, any right granted or

protected by the ADA, in violation of Title V of the ADA, 42 U.S.C. § 12203(b).

64.     Defendant City of Beaumont acted intentionally, willfully, and in disregard for the

rights of others.

65.     Intervenors Alissa Humphrey, Laura Odom, and Todd Hicks are "aggrieved

persons" under the ADA. 42 U.S.C. § 12203(c).

## VI.      RELIEF REQUESTED

66.     WHEREFORE, Intervenors Ms. Humphrey, Ms. Odom, and Mr. Hicks pray that

the Court enter an ORDER:

a.      Declaring that the Defendant's actions violate the Fair Housing Act and the

Americans with Disabilities Act and its implementing regulations;

b.      Enjoining the Defendant, its officers, employees, agents, successors and all other

persons in active concert or participation with it, from enforcing the City's one-half mile

spacing rule for community homes for persons with intellectual or developmental

disabilities;

c.      Enjoining the Defendant, its officers, employees, agents, successors and all other

persons in active concert or participation with it, from enforcing the City's fire, building

and other codes in a manner that discriminates because of disability in violation of the Fair

Housing Act and the Americans with Disabilities Act;

d.      Enjoining the Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from requiring that community homes install sprinklers, except when required under applicable State regulations and/or the applicable provisions of Chapters 32 and 33 of the National Fire Prevention Association 101 Life Safety Code;

e.      Enjoining the Defendant from retaliating against them for having pursued their housing discrimination complaints under the Fair Housing Act and the Americans with Disabilities Act;

f.      Ordering the Defendant to create a Fair Housing coordinator to ensure future reasonable accommodation requests are considered as required under both the Fair Housing Act and the Americans with Disabilities Act;

g.      Ordering that key personnel of the Defendant undergo ADA and federal FHA training;

h.      Ordering the Defendant to take all affirmative steps to ensure its compliance with the Fair Housing Act and Americans with Disabilities Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful housing practices as described herein;

i.      Ordering the Defendant to adopt procedures to handle requests for accommodations and modifications pursuant to the ADA and federal FHA;

j.      Ordering the Defendant to take all affirmative steps to restore, as nearly as practicable, the Intervenors to the position they would have been in but for the Defendant's discriminatory conduct;

k.      Awarding monetary damages, pursuant to the FHA, 42 U.S.C. § 3614(d)(1)(B), and

the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35,

to Intervenors Ms. Humphrey, Ms. Odom, and Mr. Hicks; and

l.      Assessing a civil penalty against the Defendant in an amount authorized by 42

U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

Intervenors Ms. Humphrey, Ms. Odom, and Mr. Hicks further pray for such additional

relief as the interests of justice may require.

Respectfully submitted,

 s/ Christopher P. McGreal___
CHRISTOPHER P. MCGREAL
TX State Bar No. 24051774
DISABILITY RIGHTS TEXAS
1420   Mockingbird Lane, Suite 450
Dallas, Texas 75247
(214) 845-4056 (Phone)
(214) 630-3472
(Fax)cmcgreal@drtx.org

LISA SNEAD
TX State Bar No. 24062204
DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (fax)
lsnead@drtx.org

SEAN A. JACKSON
TX State Bar No. 24057550
DISABILITY RIGHTS TEXAS
1500 McGowen, Ste. 100
Houston, Texas 77004
(713) 974-7691 (Phone)
(713) 974-7695 (Fax)
sjackson@drtx.org

GARTH A. CORBETT
TX State Bar No. 04812300

DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (fax)
gcorbett@drtx.org

*Attorneys for Petitioner*