IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 1-15-CV-201 |
| | § | |
| CITY OF BEAUMONT | § | |

**REPORT AND RECOMMENDATION DENYING**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT IN INTERVENTION**

On August 5, 2015, Alissa Humphrey, Laura Odom, and Todd Hicks (the "Intervenors") filed an Opposed Motion for Leave to Intervene, seeking to intervene in this action pursuant to Federal Rule of Civil Procedure 24. (Doc. No. 9) Defendant City of Beaumont (the "City") opposed the motion, arguing that Intervenors did not meet the statutory requirements for intervention and that Intervenors' claims were barred under a number of affirmative defenses, including res judicata, statute of limitations, and failure to satisfy conditions precedent. (Doc. No. 13.) The undersigned granted the Intervenors' motion, finding that they satisfied the statutory requirements for intervention and their claims were not barred by any of the City's affirmative defenses. (Doc. No. 37.)

Now pending before the court is the City's "Rule 12(b)(6) Motion to Dismiss Complaint in Intervention." (Doc. No. 42.) The City's motion raises virtually verbatim the same defenses as its motion opposing intervention. After reviewing the motion and arguments by the parties, the undersigned recommends denying the motion.

1

## I. Background[1]

Community homes are meant to provide housing to persons with intellectual and developmental disabilities so they may better integrate with the community at large. The City of Beaumont has enacted ordinances and fire codes applicable to these community homes. The City's ordinances include a requirement that all community homes, regardless of size or status, shall not be located within one-half mile of any other community home. Further, the City has adopted a fire code that requires the installation of sprinkler systems in all community homes regardless of size. Such sprinkler systems can cost around $30,000.

Intervenors, Alissa Humphrey, Todd Hicks, and Laura Odom, are all intellectually and developmentally disabled and were, at one time, all residents of community homes. The City, citing its one-half mile spacing rule and its fire code, required the closure of the community homes in which the Intervenors lived. Alissa Humphrey never appealed the closing of her community home, but currently lives in a community home that violates the City's one-half mile spacing requirement. Todd Hicks and Laura Odom appealed to the City's Board of Adjustment, seeking a variance to the City's ordinances. Hicks' and Odom's requests were rejected on July 19, 2011.

Humphrey, Hicks, and Odom all timely filed complaints with the U.S. Department of Housing and Urban Development ("HUD"). After reviewing the complaints, HUD referred them to the U.S. Department of Justice, which filed the present suit on behalf of the United States on May 26, 2015, under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). The United States' complaint alleges that the City's spacing rule and fire code

---

1. These facts are alleged in the Intervenors' First Amended Complaint in Intervention. (Doc. No. 39.)

ordinances discriminate against individuals with intellectual or developmental disabilities by preventing or inhibiting the operation of community homes within city limits. (Doc. No. 1, at 1.)

The City filed a motion to dismiss the United States' complaint on July 17, 2015. (Doc. No. 5.) The motion argued that the United States' claims were barred by res judicata and the statute of limitations, that the United States failed to state a claim for relief under the ADA or FHA, and that the United States failed to satisfy all conditions precedent. (Doc. No. 5, at 2.) The undersigned rejected each of these defenses and filed a report that recommended denying the City's motion. (Doc. No. 32.) The court adopted the report and recommendation and denied the City's motion to dismiss the United States' complaint. (Doc. No. 47.)

On August 5, 2015, the Intervenors filed an Opposed Motion for Leave to Intervene, seeking to intervene in the United States' lawsuit pursuant to Federal Rule of Civil Procedure 24. (Doc. No. 9.) The United States did not oppose the motion, but the City did, arguing that Intervenors did not meet the statutory requirements for intervention and that their claims were barred under a number of affirmative defenses, including res judicata, statute of limitations, and failure to satisfy conditions precedent. (Doc. No. 13.) The undersigned granted the Intervenors' motion for leave to intervene, finding that they satisfied the statutory requirements for intervention and their claims were not barred by any of the City's affirmative defenses. (Doc. No. 37.) The Intervenors subsequently filed their First Amended Complaint in Intervention. (Doc. No. 39.)

Now pending before the court is the City's "Rule 12(b)(6) Motion to Dismiss Complaint in Intervention." (Doc. No. 42.) The City's motion raises virtually verbatim the same defenses as its motion to dismiss the United States' complaint and its opposition to the Intervenors'

motion for leave to intervene. (See Doc. Nos. 5, at 2; 13, at 3; 42, at 3.) In particular, the City's motion argues that the Intervenors' complaint should be dismissed for the following reasons:

- The statute of limitations has run on each of the Intervenors' claims;
- Res judicata prevents re-litigation of these claims, which were already brought before the City's Board of Adjustment;
- The Intervenors failed to exhaust their administrative remedies;
- The Intervenors failed to state a claim for relief under the ADA or the FHA;
- The Intervenors failed to satisfy all conditions precedent; and
- The Intervenors failed to join a necessary party, the State of Texas.

(Doc. No. 42, at 3.)

## II. Legal Standard – Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). "In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff." Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003). A court should grant such a motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Likewise, a plaintiff must

4

put forth more than "'unadorned, the defendant-unlawfully-harmed-me accusation[s].'" Varela v. Gonzales, 773 F.3d 704, 707 (5th Cir. 2014) (citing Iqbal, 556 U.S. at 678).

### III. Analysis

1. Statute of Limitations

It is not clear from the face of the pleadings that the Intervenors' claims are barred by the statute of limitations. The City raises substantially the same limitations argument as its opposition to the motion for leave to intervene.[2] (Compare Doc. No. 13, at 9–10 with Doc. No. 42, at 5–6.) According to the City, a two-year statute of limitations applies to the Intervenors' FHA and ADA claims, and the incidents complained of all occurred prior to June of 2012, more than two years before the Intervenors filed their motion for leave to intervene on August 5, 2015. (Doc. No. 42, at 6.)

First, the court has already rejected the City's limitations defense regarding the Intervenors' FHA and ADA claims. (Doc. No. 37, at 12–15.) That determination is the law of the case and forecloses the City's attempt to re-litigate the issue. "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" United States v. Castillo, 179 F.3d 321, 326 (5th Cir. 1999) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)); see, e.g., James v. City of Dallas, CA 398-CV-0436-R, 2001 WL 586688, at *4 (N.D. Tex. May 22, 2001) ("This Court has previously denied the City's motion to dismiss Plaintiffs' claim on statute of

---

2. The City also raised this defense in its *reply in support* of its motion to dismiss the United States' complaint. (Doc. No. 24.) However, because the defense was not initially raised in the motion, the City did not assert the defense in a procedurally proper manner, and the court did not consider the merits of the defense. (See Doc. No. 32, at 9); Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc., 331 F. Supp. 2d 513, 539 (E.D. Tex. 2004) ("It is a basic tenet of civil procedure that reply briefing may only respond to the allegations raised in the nonmovant's response.").

limitations grounds in a hearing on October 7, 1999. This is the law of the case, and the end of the issue.")

However, for the sake of completeness, the undersigned again explains why the Intervenors' claims are not time-barred on the face of the pleadings. The statute of limitations is an affirmative defense. FED. R. CIV. P. 8(c)(1). An affirmative defense can be the basis of a 12(b)(6) motion to dismiss when it "appears clearly on the face of the pleadings." Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986). Since the Intervenors' claims are based on both the FHA and the ADA, the undersigned considers each statutory claim in turn. The FHA requires private parties to file suit within two years "after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). This limitations period does not include "any time during which an administrative proceeding under this title was pending with respect to a complaint or charge." 42 U.S.C. § 3613(a)(1)(B). One such "administrative proceeding" that could toll the limitations period is the filing of a complaint with HUD. 42 U.S.C § 3610(a)(1) (allowing an aggrieved person to file a complaint within one year of the "alleged discriminatory housing practice" with HUD, which then investigates the alleged complaint).

The Intervenors' FHA claims are not time-barred on the face of the pleadings. The Intervenors' complaint alleges that they all timely filed HUD complaints, which would have tolled the limitations period. (Doc. No. 39, at 11.) Further, the Intervenors allege that HUD referred these complaints to the U.S. Department of Justice, which then filed the current suit. (Doc. No. 39, at 11.) None of the pleadings up to this point describe the nature of HUD's involvement or the duration of its proceedings. It is not clear whether, after removing the period of time during which the HUD proceedings were in progress, the statute of limitations for

Intervenors' FHA claims has run. Therefore, the undersigned concludes that it is not clear on the face of Intervenors' motion to intervene that the statute of limitations has run on their FHA claims.

The ADA does not have a defined limitations period, so the undersigned must "borrow the most analogous period from state law." Frame v. City of Arlington, 657 F.3d 215, 237 (5th Cir. 2011). For claims under the ADA, Texas's two-year personal-injury statute of limitations is the most analogous. Id. The statute of limitations for an ADA cause of action begins to run "from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Holmes v. Tex. A&M Univ., 145 F.3d 681, 684 (5th Cir. 1998).

It does appear from the face of the pleadings that the *initial* violations of the Intervenors' rights under the ADA occurred outside the two-year limitations period. Because the Intervenors' motion for leave to intervene was filed on August 5, 2015, they must allege a violation of the ADA that occurred after August 5, 2013 to prevent dismissal on limitations grounds. While the complaint does not state the specific date on which Intervenor Humphrey suffered a compensable injury, the facts alleged demonstrate that the initial injury must have occurred sometime before September 30, 2012.[3] Intervenors Hicks and Odom likewise suffered an alleged initial injury beyond the two-year limitations period. The Intervenors' motion states that Hicks and Odom's request for a variance was rejected, at the latest, on July 19, 2011—the date

---

3. According to Intervenors' Complaint, Humphrey was forced to leave her home because the City ordered it closed for not complying with the one-half mile spacing and the sprinkler system requirements. (Doc. No. 39, at 6.) This action by the City is a sufficient "injury" to start the limitations period for Humphrey's ADA claim. See Holmes, 145 F.3d at 684. The Intervenors' complaint does not state the exact date on which Humphrey was removed from her home. However, the complaint does allege that she was transferred to a nursing facility for thirteen months after being removed from her home by the City, and she then moved into another community home in October 2013. (Doc. No. 39, at 7.) Thus, the latest date that Humphrey could have been forced to move from her home would be thirteen months before October 2013, which is September 30, 2012.

on which the Planning Manager for the City (Stephen Richardson) allegedly informed Hicks' and Odom that their accommodation request was denied. Thus, the Intervenors' initial injuries are outside the two-year statute of limitations period.

However, under the continuing violation doctrine, the Intervenors' claims are not time-barred on the face of the complaint. The continuing violation doctrine allows a plaintiff's claims to survive the statute of limitations where the pleadings allege "a series of related acts, one or more of which falls within the limitations period[,]" as opposed to "discrete discriminatory acts . . . ." Henson v. Bell Helicopter Textron, Inc., 128 F. App'x 387, 391 (5th Cir. 2005). In addition to the injuries discussed above, all three Intervenors have specifically alleged that their current community homes are in violation of the City's ordinances and risk further adverse action by the City. (Doc. No. 39, 7–9.) The Intervenors' complaint alleges that Humphrey's community home is within one-half mile of another community home, and Hicks' and Odom's community home potentially violates the City's spacing requirement and fire code ordinances. It is not clear from the face of the pleadings that the City will not enforce its ordinances in the near future, and Intervenors continue to live under that threat. Evidentiary development through discovery is necessary to determine whether and to what extent the Intervenors' current community homes face adverse action by the City as part of a series of related acts, one of which falls within the limitations period. Therefore, it is not clear from the face of the pleadings that the Intervenors have only alleged discrete discriminatory acts, such that their claims are time-barred and not saved by the continuing violation doctrine.

2. Res Judicata

The Intervenors' complaint should not be dismissed on the grounds of res judicata. (Doc. No. 42, at 9–10) Once again, the City raises a legal issue that has already been decided by this

court, and that decision is now the law of the case. (See Doc. Nos. 32, at 8–9; 37, at 10–12); see Castillo, 179 F.3d at 326. In its motion to dismiss the United States' complaint, the City argued that the Board of Adjustment's decision denying a variance is a final decision that would be given preclusive effect under Texas law. (Doc. No. 5, at 7–8.) In its opposition to the Intervenors' motion for leave to intervene, the City again argued that the Board of Adjustment's decision should be given preclusive effect. (See Doc. No. 13, at 9.) The court rejected the City's argument both times, concluding that: (1) on the face of the pleadings, the Board of Adjustment's decision would not be given preclusive effect under Texas law; and (2) one of the Intervenors, Alissa Humphrey, did not participate in the Board of Adjustment proceedings, so there was no final decision regarding her claims that could be given preclusive effect in the first place. (Doc. Nos. 32, at 8–9; 47; 37, at 10–12.) Here, the City's motion to dismiss the Intervenors' complaint raises substantially the same arguments. (Doc. No. 42, at 9–10.) The City's reply in support of its motion does not argue that its res judicata argument is in any way distinguishable from its position during earlier stages of the litigation. Therefore, it is the law of the case that the Intervenors' claims are not barred by res judicata, and the City's attempt to re-litigate that issue a third time in its motion to dismiss the Intervenors' complaint fails.

Again, for the sake of completeness, the undersigned explains why the Intervenors' claims are not barred by res judicata on the face of their pleadings. Res judicata is an affirmative defense. Brown v. Zimmerman, 160 S.W.3d 695, 701–02 (Tex. App.—Dallas 2005, no pet.). An affirmative defense can be the basis of a 12(b)(6) motion to dismiss when it "appears clearly on the face of the pleadings." Clark, 794 F.2d at 970. A federal court must give the same res judicata effect to the Zoning Board's decision that would be given by a Texas state court. Prod. Supply Co. v. Fry Steel Inc., 74 F.3d 76, 78 (5th Cir. 1996). Under Texas law, res judicata, or

9

claim preclusion, "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav., 837 S.W.2d 627, 628 (Tex. 1992). "Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second cause of action based on the same claims as were raised or could have been raised in the first action." In re D.W.G., 391 S.W.3d 154, 166 (Tex. App.—San Antonio 2012, no pet.).

The City argues that Intervenors Hicks and Odom both requested variances from the Board of Adjustment, which rejected their requests. (Doc. No. 42, at 9–10.) According to the City, Texas law would give res judicata effect to the Board's decision. (Doc. No. 42, at 9–10.)

The City has failed to show that all elements of its res judicata defense appear clearly on the face of the Intervenors' pleadings. First, Intervenor Humphrey's claims do not appear to be barred. Humphrey does not claim to have asked the Board of Adjustment for a variance. If the Board of Adjustment never adjudicated Humphrey's claims, her claims cannot be barred by res judicata. While Intervenors Hicks and Odom do allege that they sought a variance from the Board of Adjustment, it is not clear on the face of the pleadings that the Board's decision bars their claims. The pleadings do not include the basis for the Board of Adjustment's decision in order for the undersigned to determine the scope of its preclusive effects. There is no evidence in the pleadings that the same claims at issue in this case—discrimination under federal civil rights statutes—were raised and decided in the Board of Adjustment's decision. See In re D.W.G., 391 S.W.3d at 166. Moreover, it is not clear from the pleadings that the Board of Adjustment is a court of competent jurisdiction. In any event, res judicata is a fact-intensive

defense that is better suited for a motion for summary judgment. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005). Without more evidence of the Board of Adjustment's decision, the undersigned cannot conclude that Texas law would give the Board's decision preclusive effect over the claims at issue in this case.

3. Failure to Exhaust Administrative Remedies

The Intervenors' complaint should not be dismissed for failure to exhaust administrative remedies. Unlike the other defenses raised in the City's motion to dismiss, this court has not previously determined whether the Intervenors' claims are barred for failure to exhaust administrative remedies. (See Doc. No. 37, at 9–10) (declining to consider the merits of the defense because the City did not raise the defense until its sur-reply in opposition to motion for leave to intervene). Therefore, this defense is not precluded under the law of the case. Alpha/Omega Ins. Services, Inc. v. Prudential Ins. Co. of Am., 272 F.3d 276, 279 (5th Cir. 2001) ("[T]he law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not.")

Nevertheless, the Intervenors' claims should not be dismissed for failure to exhaust administrative remedies. In reality, this is not a new defense but a mere re-labeling of the City's res judicata defense. After asserting its res judicata argument, the City perfunctorily states that "[a]lternatively, the failure of each of the Intervenors to file and follow through with the appeals available to them at the local level in a timely manner demonstrates a failure to exhaust the administrative remedies available to them." (Doc. No. 42, at 10.) The City's argument is without merit—the Intervenors were not required under either statute to exhaust administrative remedies before filing this action. While subchapter I of the ADA, which prohibits discrimination against disabled individuals with respect to *employment*, does require exhaustion

11

of administrative remedies prior to filing suit,[4] subchapters II and V do not. (See Doc. No. 39, at 1) ("Alissa Humphrey, Laura Odom, and Todd Hicks bring this complaint in intervention . . . under . . . Titles II and V of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134, 12203 . . . .")  Likewise, the FHA does not require the exhaustion of administrative remedies prior to filing suit. Oliver v. Foster, 524 F. Supp. 927, 929 (S.D. Tex. 1981) (citing Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91 105–06 (1979). Therefore, the Intervenors' complaint should not be dismissed for failure to exhaust administrative remedies.

4. Failure to State a Claim

The Intervenors' complaint states a plausible claim for relief under the FHA or the ADA. In its earlier motion to dismiss the United States' complaint, the City similarly argued that the United States failed to state a claim under either statute.[5] (Doc. No. 5, at 8–15.) The Intervenors were not a party to the case at that time. However, the United States complaint raises the exact same claims as the Intervenors' complaint.[6] (Compare Doc. No. 1, at 13–17 with 38, at 11–15.) Indeed, the factual bases for the United States' and the Intervenors' claims are essentially identical. (Compare Doc. No. 1, at 3–12 with 38, at 3–11.) Thus, the City's motion to dismiss the Intervenors' complaint raises substantially the same legal issues as its motion to dismiss the United States' complaint, which the court denied. The court's prior ruling constitutes the law of the case and precludes further litigation on these issues. See Castillo, 179 F.3d at 326.

---

4. See 42 U.S.C. § 12117(a); Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996).

5. The City did not raise this defense in its opposition to the Intervenors' motion for leave to intervene. (Doc. No. 13.)

6. The United States filed this lawsuit pursuant to the Attorney General's authority to enforce the rights of an "aggrieved person" through civil actions in federal court, 42 U.S.C. § 3614, and has identified the three Intervenors as aggrieved persons. (Doc. No. 1, at 12.)

Again, for the sake of completeness, the undersigned addresses the sufficiency of the Intervenors' allegations and concludes that the Intervenors' complaint has stated a plausible claim for relief under both the FHA and the ADA. The Intervenors have three available theories for establishing a discrimination claim under the FHA or the ADA: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation. Tsombanidis v. W. Haven Fire Dept., 352 F.3d 565, 573 (2d Cir. 2003); see also United States v. City of New Orleans, CIV.A. 12-2011, 2013 WL 1767787, at *4 (E.D. La. Apr. 24, 2013) (citing cases).

The complaint contains sufficient allegations to state a plausible claim for relief under each of the three possible theories. First, the complaint contains sufficient allegations of intentional discrimination (disparate treatment). The Intervenors allege that the City's one-half mile spacing rule and the fire code requirements treat disabled and non-disabled persons differently. The complaint alleges that the spacing rule "applies only to community homes for persons with disabilities" and not to homes "for persons without disabilities." (Doc. No. 39, at 4.) The City's motion to dismiss argues that the Intervenors' complaint "does not suggest ill intent or improper assumptions about the disabled on the part of the City of Beaumont." (Doc. No. 42, at 11.) However, intentional discrimination may be proven by circumstantial evidence, and it is plausible that the disparate treatment alleged was motivated by an intent to discriminate. Kormoczy v. Sec'y, U.S. Dept. of Hous. & Urban Dev. on Behalf of Briggs, 53 F.3d 821, 824 (7th Cir. 1995) (noting that, under the FHA, "discriminatory intent [can be shown] either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test").

Second, the Intervenors' complaint contains sufficient allegations to plausibly suggest disparate impact. To prove a disparate impact discrimination claim, the plaintiff must show the existence of a facially neutral policy or practice that "actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of [disability]." 24 C.F.R. § 100.500(a); see also 28 C.F.R. § 35.130(b)(3) (corresponding ADA provision). Under Fifth Circuit case law, the question is "whether a policy, procedure, or practice specifically identified by the plaintiff has a significantly greater discriminatory impact on members of a protected class." Simms v. First Gibraltar Bank, 83 F.3d 1546, 1555 (5th Cir. 1996); see also Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507, 2518 (2015) (holding that disparate-impact claims are cognizable under the FHA). Again, the Intervenors' complaint alleges that the City's spacing rule and fire code requirements apply only to community homes. (Doc. No. 39, at 4–5.) These allegations are sufficient to plausibly suggest a disparate impact on disabled persons. The City argues that the Intervenors must include "some type of analytical mechanism or statistical information" to state a claim for disparate impact. (Doc. No. 42, at 12–13.) The City cites *Tsombanidis v. W. Haven Fire Department* to demonstrate the kind of proof needed to establish a disparate impact claim. See 352 F.3d at 573. However, the City confuses the Intervenors' burden of proof at trial with the minimal pleading requirements under the Federal Rules of Civil Procedure. *Tsombandis*, which is not binding in this Circuit, considered whether the plaintiffs had presented sufficient evidence at trial for each element of their prima facie case, not whether the plaintiffs had pled sufficient allegations to survive a Rule 12(b)(6) motion to dismiss. Id. at 578. For purposes of a motion to dismiss, the undersigned must accept as true all allegations contained in the complaint. Iqbal, 556 U.S. at 679. Taking the allegations in the complaint as

14

true, they plausibly suggest that the policies identified have a "significantly greater discriminatory impact on members of a protected class." See Simms, 83 F.3d at 1555.

Finally, the Intervenors' complaint plausibly suggests that they were denied reasonable accommodations. Each of the Intervenors were allegedly adversely impacted by the City's restrictions and that the City denied some of the Intervenors a variance. (Doc. No. 39, at 9–11.) The complaint contains enough well-pleaded facts to survive a motion to dismiss under Rule 12(b)(6).

5. Failure to Satisfy Conditions Precedent

The City also argues that the Intervenors' reasonable-accommodation claims under the FHA and ADA are barred because they have not satisfied all "conditions precedent" prior to filing their complaint in intervention. (Doc. No. 42, at 17–18.) The court has already twice rejected this argument. (Doc. Nos. 32, at 6–8; 37, at 15–16). It is, therefore, precluded under the law of the case. See Castillo, 179 F.3d at 326.

The undersigned will again address the City's defense. The City argues that the Intervenors did not provide the City with an opportunity to accommodate their needs as disabled persons. (Doc. No. 42, at17–18.) The City characterizes this as a failure to meet a "condition precedent" to filing suit. First, the City has provided no case law establishing that a request for reasonable accommodation is a "condition precedent" to filing the lawsuit. Second, even assuming that such a request is a condition precedent, the Intervenors' allegations, which must be taken as true at this stage of the litigation, are sufficient. The Intervenors have alleged that "[a]ll conditions precedent to the filing of this complaint have occurred or been performed" and have explained in detail their attempts to request an accommodation from the City. (Doc. No. 39, at 9, 14.) While it is true that the Intervenors will likely need to prove these allegations to prevail at

15

trial, the City has provided no basis for finding that these allegations are insufficient at the pleading stage. Therefore, the Intervenors' reasonable-accommodation claims should not be dismissed for failure to satisfy conditions precedent.

6. Failure to Join a Necessary Party

Finally, the City argues that the Intervenors' complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party. According to the City, the State of Texas is a necessary party under Rule 19, because state law requires the same spacing requirements and fire code provisions at issue in this case, and therefore, the state has a legally protected interest in the outcome of the case. Additionally, the City claims it could be subjected to inconsistent obligations should the court find that the City's requirements violate federal law, because the State of Texas obligates the City to enforce those requirements. (Doc. No. 42, at 18–22.) The court previously rejected these arguments when the City raised them in a motion to dismiss the United States' complaint.[7] (See Doc. Nos. 32, at 10–12; 47). That decision is now the law of the case, and City's argument is foreclosed. See Castillo, 179 F.3d at 326.

### IV. Recommendation

The City has not shown that the Intervenors' complaint should be dismissed pursuant to Rule 12(b)(6) or 12(b)(7). Therefore, the City's "Rule 12(b) Motion to Dismiss Complaint in Intervention" should be denied. (Doc. No. 42.)

---

[7]. The undersigned's report, which recommended denying the City's motion to dismiss the United States' complaint, instead concluded that the proper approach was to send notice to the Texas Attorney General to provide the state an opportunity to intervene and protect any interests it may have in the litigation. (Doc. No. 32, at 12.) The State of Texas opted not to intervene. Subsequently, the City filed a third party complaint against the State of Texas in order to compel the state to join the lawsuit. (Doc. No. 61.) The state has since filed a motion to dismiss the third party complaint. (Doc. No. 79.)

## V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen days after being served with a copy of this report, and (4) be no more than eight pages in length. See 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2); LOCAL RULE CV-72(c). A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 22nd day of March, 2016.

_____
Zack Hawthorn
United States Magistrate Judge