IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:15-cv-00201-RC |
| ALISSA HUMPHREY, by and through her | § | |
| guardian and next friend, Barbara | § | JUDGE:  RON CLARK |
| Beauchamp, LAURA ODOM, and TODD | § | MAGISTRATE JUDGE:  ZACK HAWTHORN |
| HICKS, | § | |
| | § | |
| Plaintiff-Intervenors, | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF BEAUMONT, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## CONSENT DECREE

## I.  BACKGROUND

1.      The United States initiated this action on May 27, 2015 to enforce the Fair

Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing

Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3601-3631, and Title II of the Americans

with Disabilities Act, 42 U.S.C. § 12132, and its implementing regulations, 28 C.F.R. Part 35

("ADA").  In its Complaint, the United States alleges that the City of Beaumont, Texas

("City") violated the FHA and the ADA by 1) imposing a one-half mile spacing requirement on

small group homes for persons with intellectual or developmental disabilities, and 2) imposing

unjustified, heightened fire code requirements on such homes.

2.      The United States alleges that the City's actions as described in the Complaint

violated the Fair Housing Act, as follows:  42 U.S.C. § 3604(f)(1), by denying or otherwise

making dwellings unavailable because of disability; 42 U.S.C. § 3604(f)(2), by discriminating

in the terms, conditions, or privileges of housing, or in the provision of services or facilities in connection with housing, because of disability; 42 U.S.C. § 3604(f)(3)(B), and by failing or refusing to make a reasonable accommodation in rules, policies, practices, or services, when such accommodation may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling; and 42 U.S.C. § 3617, by interfering with persons in the exercise or enjoyment of, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of, rights granted or protected by the FHA.

3.        The United States also alleges that the City violated Title II of the ADA, 42 U.S.C. § 12132, by excluding persons with disabilities from participating in and denying them the benefits of services, programs, or activities and by failing to make reasonable modifications in its rules, policies, practices, or services, which excluded persons with disabilities from participating in or denied them the benefits of services, programs, or activities.  The United States further alleges that the City interfered or threatened to interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, rights protected under the ADA, in violation of 42 U.S.C. § 12203.

4.        The United States further alleges that the City's conduct constitutes a pattern or practice of discrimination and a denial of rights to a group of persons that raises an issue of general public importance in violation of Section 814(a) of the FHA, 42 U.S.C. § 3614(a), or a discriminatory housing practice under Section 814(b) of the FHA, 42 U.S.C. § 3614(b).

5.        On November 24, 2015, the Court granted the motion of Alissa Humphrey, Todd Hicks, and Laura Odom to intervene as of right as plaintiffs in this case.  Order, ECF No. 37. Ms. Humphrey, Mr. Hicks and Ms. Odom have similarly alleged that the City violated their

**Consent Decree – Page 2**

rights under the Fair Housing Act and Title II of the Americans with Disabilities Act.  Compl.

Interv., ECF No. 38.

6.      The City of Beaumont denies the claims of Plaintiff and Intervenors and denies

that its ordinances, regulations and enforcement practices operate to discriminate against any

person or to in any way deny the benefits of services, programs, or practices to persons with

disabilities.  The City has also taken the position that its one-half mile spacing rule was based on

Tex. Hum. Res. Code § 123.008.

7.      The United States, Plaintiff-Intervenors and Defendant desire to avoid costly and

protracted litigation and have voluntarily agreed to resolve the United States' and Plaintiff-

Intervenors' claims against the Defendant by entering into this Consent Decree, as indicated by

the signatures below.

8.      This Decree binds all parties to the full and final resolution that is described

herein of all actual and potential interests, allegations, defenses, claims, counterclaims, and

relating to the subject matter of the disputes that have been raised or could have been raised

under the FHA and ADA.

Therefore, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## II.  FACTUAL STIPULATIONS

9.      The City is defined herein as its employees, boards, commissions, and members

of its boards and commissions, including, but not limited to, the Department of Planning and

Community Development, the Fire Department, and the Construction Board of Adjustment and

Appeals.

**Consent Decree – Page 3**

10.     The City of Beaumont is a Texas Home Rule City, created, organized and existing under Art. 11, Sec. 5, Constitution of the State of Texas.  The City has the capacity to sue or be sued.

11.     The City is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1).

12.     Pursuant to Texas law,"[e]ach person with an intellectual disability has the right to live in the least restrictive setting appropriate to the persons' individual needs and abilities and in a variety of living situations, including living … in a group home ..."  Tex. Health & Safety Code § 592.013.  Pursuant to this and other legal requirements, the Texas Department of Aging and Disability Services (DADS) is charged with "administering and coordinating programs to provide community based care and support services to promote independent  living for populations that would otherwise be institutionalized."  Tex Hum. Res. Code § 161.071(1).

13.     Small group homes that serve persons with intellectual or developmental disabilities are homes for up to three or four residents (depending on the nature of the home) that are governed by 40 Tex. Admin. Code §§ 9.151 – 9.192 (Nov. 15, 2015) and are certified to operate, inspected by, and funded by DADS under the Medicaid Home-and-Community-Based Services waiver program (HCS waiver).  For purposes of this Decree, such homes shall be referred to as "small group homes for persons with intellectual or developmental disabilities."

14.     Small group homes for persons with intellectual or developmental disabilities include "residential support," "supervised living," and "host home/companion care" homes.  See 40 Tex. Admin. Code §§ 9.154(c)(4), 9.174(a)(23).  "Residential support" and "supervised living" homes may not have more than four residents with intellectual or developmental disabilities.  Id. §§ 9.174(34)(A), 9.174(36)(A).  "Host home/companion care" homes may not

have more than three residents with intellectual or developmental disabilities.  Id. §

9.174(38)(A).  DADS' certification procedures include fire safety requirements for such homes.

See id. §§ 9.171, 9.178.

15.     Under the State's regulations, small group homes for persons with intellectual or

developmental disabilities must be located "in a home that is a typical residence within the

community[.]"  Id. § 9.174(a)(23).

16.     Under the State's regulations, small group homes may not be any of the

following:  a licensed intermediate care facility for persons with intellectual or developmental

disabilities; a nursing facility; a licensed assisted living facility; a licensed residential child-care

operation; a facility licensed by the Texas Department of State Health Services; a facility

operated by the Texas Department of Assistive and Rehabilitative Services; or a juvenile justice

facility, jail or prison.  Id. § 9.155(a)(5).

17.     Under the State's regulations, small group homes may not be located or

congregated in a manner that creates a residential area distinguishable from other areas primarily

occupied by persons who do not require routine support services because of a disability, where

most of the residents of the dwellings are persons with intellectual or developmental disabilities,

or where homes share personnel, equipment or service facilities in order to provide routine

support services to residents.  Id. §§ 9.153(26)(D), 9.153(81)(D), 9.155(a)(5)(H).

18.     Small group homes for persons with intellectual or developmental disabilities are

"dwellings" within the meaning of 42 U.S.C. § 3602(b). Residents or prospective residents of

such dwellings are persons who are "handicapped" within the meaning of 42 U.S.C. § 3602(h),

and are "qualified individuals with disabilities" within the meaning of 42 U.S.C. §§ 12102 and

12131(2) and 28 C.F.R. § 35.104.

**Consent Decree – Page 5**

19.     In February 2011, Laura Odom and Todd Hicks, two individuals with intellectual or developmental disabilities whose small group homes were the subject of code enforcement action by the City, asked the City's Zoning Board of Adjustment to waive the one-half mile spacing rule as to their apartments as a reasonable accommodation to their disabilities.  The Board refused this request.

20.     On or about May 31, 2011, Mr. Hicks and Ms. Odom sought a reasonable accommodation from the fire code requirements from the City's heightened fire code requirements for small group homes.  They received no response to this request.

### III. PROCEDURAL HISTORY

21.     Ms. Odom and Mr. Hicks filed complaints with the U.S. Department of Housing and Urban Development (HUD) on or about August 8, 2011, alleging discrimination in housing on the basis of disability in violation of the Fair Housing Act.  On or about July 11, 2013, HUD referred these complaints to the U.S. Department of Justice pursuant to 42 U.S.C. § 3610(e)(2).

22.     Alissa Humphrey and Disability Rights Texas filed complaints with HUD on or about July 25, 2013, alleging discrimination in housing on the basis of disability in violation of the Fair Housing Act.  On or about August 27, 2013, HUD referred these complaints to the U.S. Department of Justice pursuant to 42 U.S.C. § 3610(e)(2).

23.     After attempting voluntary compliance, the United States filed this action on May 27, 2015.  Compl., ECF No. 1.  The City moved to dismiss this case under Fed. R. Civ. P. 12(b)(6) and to name the State of Texas as a required party under Fed. R. Civ. P. 12(b)(7) and 19.  ECF No. 5.  On January 14, 2016, the Court issued a final ruling denying this motion.  Order Overruling Objections and Adopting Magistrate Judge's Report and Recommendation, ECF No. 47.

**Consent Decree – Page 6**

24.     On February 19, 2016, the City filed a Third-Party Complaint against the State of

Texas.  ECF No. 61.  On February 29, 2016, the United States moved to strike this complaint.

ECF No. 70.  On March 9, 2016, the State moved to dismiss the Third-Party Complaint.  ECF

No. 79.  In its motion to dismiss, the State took the position that "the state statutes at issue do not

require the City to take the measures challenged by the United States and the plaintiff

intervenors" and that the State would not take action against the City for failing to enforce a one-

half mile spacing requirement or fire code requirements.  State Mot. Dismiss at 8; see also

State's Reply to Mot. Dismiss at 9, ECF No. 99 ("[T]he City is not compelled by either of the

state laws at issue to take any action that has the effect of excluding individuals from

community-based group homes or excluding community-based group homes from Beaumont.").

## IV. GENERAL NON-DISCRIMINATION PROVISIONS

25.     The Defendant, its agents, employees, successors, and all persons in active

concert or participation with it, shall not:

a.      Discriminate in the sale or rental, or otherwise make unavailable or deny,

a dwelling to any person because of a disability;

b.      Discriminate in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection therewith, on the basis

of disability;

c.      Adopt, maintain, enforce, or implement any zoning or land use laws,

regulations, policies, procedures or practices that discriminate on the basis of disability in

violation of the FHA and the ADA;

**Consent Decree – Page 7**

d.      Implement or administer any zoning laws, regulations, policies, procedures or practices in such a manner as to discriminate on the basis of disability in violation of the FHA and the ADA;

e.      Refuse to make reasonable accommodations in the application of rules, policies, practices or services when such accommodations may be necessary to afford a person or persons with disabilities an equal opportunity to use and enjoy a dwelling;

f.      Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA and the ADA.

## V. SPECIFIC INJUNCTIVE RELIEF

26.     Immediately upon entry of this Decree, the City shall cease to enforce its one-half mile spacing rule for small group homes for persons with intellectual or developmental disabilities, and shall permit such homes to operate as a permitted use in any zoning district where families may reside in single- or multiple-family dwellings, including the following:  A-R, R-S, RM-M, RM-H, RCR, RCR-H, GC-MD, GC-MD-2, and PUD.  See City of Beaumont Code § 28.01.005.

27.     Any new ordinance, rule, policy or practice by the City that limits or restricts the location, operation or zoning status of small group homes for persons with intellectual or developmental disabilities must be in writing and must first be submitted to and approved by the United States thirty (30) days prior to the adoption of the proposed change.  Such a policy shall not contain a specific geographic limit on the location of small group homes.  Such a policy shall also not prohibit small group homes from being located in multifamily residential buildings.

**Consent Decree – Page 8**

28.     The City shall not require small group homes for persons with intellectual or developmental disabilities to comply with any fire code or fire safety requirements that are not imposed on dwellings with the same or greater number of residents without disabilities, or that are not required by DADS or any State agency with responsibility for licensing or certifying small group homes.

29.     The City shall not impose any fines or penalties or otherwise initiate or pursue any enforcement action against any small group home for persons with intellectual or developmental disabilities operating prior to the effective date of this Decree, or any owners, operators, employees, staff or agents of such homes, because such homes did not have a Certificate of Occupancy from the City of Beaumont, were in violation of any one-half mile spacing rule, or were operating as a "business," were operating in a residential zoning district, and/or lacked any fire safety measure not required by DADS, the State Fire Marshal, or other State agency.

## VI. REASONABLE ACCOMMODATION POLICY

30.     The City shall adopt a written policy that will provide a process by which persons may request reasonable accommodations or modifications on the basis of disability from the City's zoning, land use and code requirements.  Such policy shall be in substantially the same form as that contained in Attachment A, shall comply with the FHA and the ADA, shall not utilize the standards set forth in City of Beaumont Code of Ordinances § 28.02.005(e)(1), and shall include the following provisions:

a.     A description of where and how the City will accept and process requests for accommodation or modification in their rules, policies, practices, or in the provision of its services;

**Consent Decree – Page 9**

b.      The City shall provide written notification to those requesting a reasonable accommodation or modification of Defendants' decision regarding the request for accommodation or modification within twenty (20) days of the receipt of the request;

c.      If the City denies a request for reasonable accommodation or modification, it shall include an explanation of the basis for such denial in the written notification;

d.      The City shall maintain records of all requests for reasonable accommodation or modification and the City's responses thereto;

e.      The City shall not charge a fee for requesting a reasonable accommodation or modification;

f.      The City shall not impose any additional fees, costs, or otherwise retaliate against any person who has exercised his or her right under the FHA or ADA to make one or more reasonable accommodation or modification requests; and

g.      The request for or denial of a reasonable accommodation shall not operate, and shall not be argued or construed by the City to operate, to bar, estop, or otherwise limit in any way the right or ability of the person or entity making the request to challenge the denial of the requested accommodation in court under the FHA, ADA or any other applicable federal, state or local laws.

## VII.   COMPLIANCE OFFICER

31.     Within thirty (30) days after the entry of this Decree, the City shall designate an individual as the Fair Housing Compliance Officer ("FHCO"). The FHCO shall have the responsibility to receive complaints of alleged housing discrimination and disability discrimination against the City, serve as a resource to the City and its officers, elected and

**Consent Decree – Page 10**

appointed officials, employees, and agents on fair housing and disability rights, and coordinate the City's compliance with this Decree.

32.     The FHCO shall be designated to receive and review all complaints of housing discrimination and disability discrimination made against Defendants or any officer, elected or appointed official, employee, or agent of Defendants.

33.     Within thirty (30) days of receiving a complaint of housing discrimination or disability discrimination, the FHCO shall provide counsel for the United States[1] with a copy of the complaint, any documents filed with the complaint, and any written response to the complaint by the City, and shall inform counsel for the United States whether the complaint has been resolved. If the complaint has not been resolved, the FHCO shall inform counsel for the United States of any efforts Defendants undertook or plan to undertake to resolve the complaint.

34.     The FHCO shall maintain copies of this Decree, the Fair Housing Policy described below, and the HUD Complaint form and HUD pamphlet entitled "Are you a victim of housing discrimination?" (HUD official forms 903 and 903.1, respectively) and make these materials freely available to anyone, upon request, without charge, including all persons making fair housing complaints to the FHCO.

35.     During the term of this Decree, the FHCO shall report to the City every three months on activities taken in compliance with this Decree.

---

[1]All correspondence required to be sent to the United States under the provisions of this Order shall be sent to: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, Attn: DJ 175-75-94, at the following address:

Regular U.S. Mail:      950 Pennsylvania Avenue, NW – NWB
                        Washington, D.C.  20530
Overnight Mail:         1800 G Street, NW
                        Suite 7002
                        Washington, D.C.  20006

**Consent Decree – Page 11**

## VIII.  <u>FAIR HOUSING TRAINING</u>

36.    Within one hundred twenty (120) days after entry of this Decree, the City shall provide training(s) on the requirements of the Decree, the FHA (in particular, those provisions that relate to disability discrimination), and the ADA (in particular, the ADA's application to zoning). The training(s) shall be provided to all City employees who have duties related to the planning, zoning, permitting construction, or occupancy of residential housing, including but not limited to: all members, staff and employees of the Zoning Board of Adjustment and the Construction Board of Adjustment and Appeals. The training(s) should be conducted in accordance with the following:

a.    The training(s) shall be conducted by a qualified third party or parties, subject to the approval of the United States. The trainer(s) shall not be connected to the City or their officers, elected or appointed officials, employees, agents or counsel. No fewer than thirty (30) days before the date of each training under this paragraph, the City shall submit to counsel for the United States the name of the person(s) or organization(s) proposed to provide the training, together with copies of the professional qualifications of such person(s) or organization(s) and copies of all materials to be used in the training. Training by the U.S. Department of Housing and Urban Development shall satisfy this provision.

b.    Any expenses associated with the training(s) shall be borne by the City.

c.    The training(s) shall be video recorded and the City shall maintain copies of the written materials provided for each training. Each newly hired individual covered by this paragraph shall first receive training within thirty (30) days after the date he or she enters office or commences service or employment, either (1) by attending the next

**Consent Decree – Page 12**

regularly scheduled annual live training, if it occurs within the thirty (30) day period, or (2) by viewing a video recording of the most recent live training and receiving copies of any written materials provided for that training.

   d.  The City shall provide a copy of this Decree to each person required to receive the training(s).

   e.  The City shall require each trainee to execute a certification confirming:  i) his or her attendance; ii) the date of the training; and iii) his or her receipt and comprehension of the Decree. The Certification of Training and Receipt of Consent Decree appears at Attachment B to this Decree. All trainees shall complete the certifications at the conclusion of each training session.

  37.  Within one hundred twenty (120) days after the entry of this Decree, the City shall hold a one-time, live training on the requirements of the FHA (in particular, those provisions that relate to disability discrimination) for the Mayor and Council in compliance with the Texas Open Meetings Act.  The trainer(s) for the live presentation shall be unconnected to the Defendant or its employees, officials, agents, or counsel.  Trainer(s) and training must be approved by the United States, which approval will not be unreasonably withheld.  Any expenses associated with training shall be borne by the Defendant.  Training by the U.S. Department of Housing and Urban Development shall satisfy this provision.  Each Councilperson shall execute a certification confirming:  i) his or her attendance; ii) the date of the training; and iii) his or her receipt and comprehension of the Decree. The Certification of Training and Receipt of Consent Decree appears at Attachment B to this Decree. All trainees shall complete the certifications at the conclusion of each training session

**Consent Decree – Page 13**

## IX. <u>FAIR HOUSING POLICY</u>

38.     Within sixty (60) days of the date of this Decree, the City shall adopt a Fair

Housing Policy. The Fair Housing Policy shall list the name and contact information for the

City's Fair Housing Compliance Officer designated in accordance with Part III, above. The City

shall include the Fair Housing Policy in all literature and information or application materials

provided to landlords, owners and operators of group homes or other housing for persons with

disabilities, and disability rights organizations. The City shall include the Fair Housing Policy as

a readily accessible link on the City's website.

39.     Within thirty (30) days of the date of this Decree, the City shall place the phrase

"Equal Housing Opportunity" or the fair housing logo (as described in 24 C.F.R. § 110.25) on

the City's website. The City shall place the same in all future published notices and

advertisements related to housing or residential development.

## X.  <u>REPORTING AND RECORD KEEPING</u>

40.     Within one hundred twenty (120) days after entry of this Decree, the City shall

submit all executed copies of the Certification of Training and Receipt of Consent Decree

(Attachment B) described in paragraphs 36(e) and 37 above, and a copy of its adopted Fair

Housing Policy described in paragraph 38, above.

41.     The City shall prepare compliance reports twice annually for the term of this

Decree detailing all actions they have taken to fulfill their obligations under this Decree since the

last compliance report. The City shall submit their first report to the United States within six (6)

months after entry of the Decree, and subsequent reports every six (6) months thereafter for the

duration of the Decree, except that the final report shall be delivered to the United States not less

than sixty (60) days prior to the expiration of this Decree. Defendants shall include in the

**Consent Decree – Page 14**

compliance reports, at a minimum, the following information:

    a.    A summary of each zoning or land-use request or application related to group homes on which the City hase made a determination, indicating: i) the date of the application; ii) the applicant's name; iii) the applicant's current street address; iv) the street address of the subject property or proposed housing; v) The City's decision(s) regarding the matter, including any decision on appeal; vi) the reasons for each decision, including a summary  of the facts upon which the City relied; and vii) complete copies of any minutes or recordings from all meetings or hearings discussing the zoning request or application;

    b.    Representative copies of any published notices or advertisements containing the phrase "Equal Housing Opportunity" or the fair housing logo as described in paragraph 39, above;

    c.    Copies of any Certifications of Training and Receipt of Consent Decree (Attachment B) described in paragraphs 36(e) and 37, above, that are signed after the preceding compliance report was issued; and

    d.    Copies of any materials that have been previously submitted to counsel for the United States under this Decree if such materials have been substantially altered or amended since they were last submitted to counsel for the United States.

42.    For the duration of this Decree, the City shall retain all records relating to compliance with any provision of this Decree.  Counsel for the United States shall have the opportunity to inspect and copy any such records after giving reasonable advance notice to counsel for the City, subject to the City's current records retention policy.

## XI. COMPENSATION OF AGGRIEVED PARTIES

43.     Defendant shall pay a total of FOUR HUNDRED AND THIRTY FIVE THOUSAND DOLLARS ($435,000) in monetary damages to Plaintiff-Intervenors and other persons whom the United States has determined to be aggrieved persons, as follows:

a.   Within thirty (30) days of entry of this Decree, Defendant shall deliver to counsel for Plaintiff-Intervenors, with a copy to counsel for the United States, checks payable to Todd Hicks, Laura Odom, and Alissa Humphrey, or payable to a trustee or legal representative as directed by counsel, in the following amounts:

| | |
|---|---|
| Mr. Hicks: | $60,000 |
| Ms. Odom: | $60,000 |
| Ms. Humphrey: | $80,000 |

b.   Within thirty (30) days of entry of this Decree, Defendant shall deliver to counsel for the United States checks payable to persons listed in Attachment D and in the amounts listed in Attachment D for each person.  The individuals listed in Attachment D are the only individuals or entities for whom the United States seeks damages under this Decree.

c.   When counsel for the United States and Plaintiff-Intervenors have received checks from the City and a signed release in the form of Attachment C from each such person, counsel for the United States and Plaintiff-Intervenors shall deliver each check to each person and the original, signed releases to counsel for the City. No person shall be paid until he or she has signed and delivered to counsel for the United States and Plaintiff-Intervenors the release at Attachment C.

**Consent Decree – Page 16**

44.     Within 30 days of entry of this Decree, Defendant shall pay a total of $25,000 in full satisfaction of all claims for attorneys' fees and costs by Plaintiff-Intervenors by delivering a check in that amount to counsel for the Plaintiff-Intervenors and payable to Disability Rights Texas.

## XII. CIVIL PENALTY

45.     Within twenty (20) days of entry of this Decree, the City shall pay a total of FIFTEEN THOUSAND DOLLARS ($15,000) to the United States Treasury as a civil penalty pursuant to 42 U.S.C.  § 3614(d)(1)(C) to vindicate the public interest.  The payment shall be in the form of an electronic fund transfer pursuant to written instructions to be provided by the United States.

46.      In the event that the City, its agents, or its employees engage in any future violation(s) of the FHA or ADA, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## XIII. JURISDICTION AND SCOPE

47.     The parties stipulate and the Court finds that the Court has personal jurisdiction over the City for purposes of this civil action, and subject matter jurisdiction over the United States' claims in this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 3614(b)(1).

48.     This Decree shall remain in effect for a period of three (3) years after its entry. The Court shall retain jurisdiction over the action for the duration of the Decree for the purpose of enforcing its provisions and terms.  The United States may move the Court to extend the duration of the Decree in the interests of justice.

49.     Any time limits for performance imposed by this Decree may be extended or

**Consent Decree – Page 17**

shortened by mutual written agreement of the parties. The other provisions of this Decree may be modified by written agreement of the parties or by motion to the Court. If the modification of a provision other than a time limit for performance is made by written agreement of the parties, then such modification will be effective upon filing of the written agreement with the Court and remain in effect for the duration of the Decree or until such time as the Court indicates through written order that it has not approved the modification.

## XIV. <u>ENFORCEMENT</u>

50.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by either party to perform in a timely manner any act required by this Decree, or otherwise to act in conformance with any provision thereof, either the City or the United States may move this Court to impose any remedy authorized by law or equity.

## XV. <u>COSTS AND FEES</u>

51.     Except as stated above, the parties will bear their own costs and fees associated with this litigation.

**Consent Decree – Page 18**

## XVI. <u>TERMINATION OF LITIGATION HOLD</u>

52.     The parties agree that, as of the date of the entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described above. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves either party of any other obligations imposed by this Consent Decree.

So **ORDERED** and **SIGNED** this **15** day of **June, 2016.**


_____
Ron Clark, United States District Judge

**Consent Decree – Page 19**

By their signatures below, the parties consent to the entry of this Consent Decree.

For Plaintiff United States of America:

LORETTA E. LYNCH
Attorney General

JOHN MALCOLM BALES
United States Attorney
Eastern District of Texas

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

MICHAEL LOCKHART
Assistant United States Attorney
350 Magnolia Avenue, Suite 150
Beaumont, TX  77701
Tel:  (409) 839-2538
E-mail:  Michael.Lockhart@usdoj.gov

SAMEENA S. MAJEED
Acting Chief
TIMOTHY J. MORAN
Deputy Chief
MAX LAPERTOSA
AURORA BRYANT
ELISE SANDRA SHORE
ABIGAIL A. NURSE
Attorneys
United States Department of Justice
Housing and Civil Enforcement Section
Civil Rights Division
950 Pennsylvania Ave. NW – G St.
Washington, DC  20530
Tel:  (202) 305-1077
Fax:  (202) 514-1116
E-mail:  Max.Lapertosa@usdoj.gov

For Plaintiff-Intervenors Alissa Humphrey, Todd Hicks, and Laura Odom:


CHRISTOPHER MCGREAL
RACHEL COHEN-MILLER
DISABILITY RIGHTS TEXAS
1420 Mockingbird Lane, Suite 450
Dallas, TX 75247
Tel:  (214) 845-4056
Fax:  (214) 630-3472

GARTH CORBETT
LISA SNEAD
DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, TX 78758
Tel:  (512) 454-4816
Fax:  (512) 454-3999

SEAN A. JACKSON
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, TX 77004
Tel:  (713) 974-7691
Fax:  (713) 974-7695

For Defendant City of Beaumont:

WILLIAM M. McKAMIE
ADOLFO RUIZ
BARBARA L. QUIRK
CHARLES H. SIERRA
ADRIAN A. SPEARS
MCKAMIE KRUEGER, LLP
941 Proton Road
San Antonio, TX 78258
Tel:  (210) 546-2122
Fax:  (210) 546-2130


TYRONE E. COOPER
City Attorney
City of Beaumont
801 Main Street
Beaumont, TX  77701
Tel:  (409) 880-3715


KYLE HAYES
City Manager
City of Beaumont
801 Main Street
Beaumont, TX  77701


Consent Decree – Page 22

**ATTACHMENT A**
**Reasonable Accommodation Policy**

## I. Introduction

It is the policy of the City of Beaumont, Texas ("City"), pursuant to the Fair Housing Amendments Act of 1988, the Americans with Disabilities Act and applicable state laws, to provide individuals with disabilities reasonable accommodations (including modifications or exceptions) in the City's zoning, land use, and other regulations, codes, rules, policies and practices, to ensure equal access to housing and to facilitate the development of housing for individuals with disabilities, or developers of housing for people with disabilities, flexibility in the application of land use, zoning, building and other regulations, policies, practices and procedures, including waiving certain requirements, when it is necessary to eliminate barriers to housing opportunities to ensure a person with a disability has an equal opportunity to use and enjoy a dwelling.

This Policy provides a procedure for making requests for accommodations in land use, zoning, building regulations and other regulations, policies, practices, and procedures of the jurisdiction to comply fully with the intent and purpose of applicable laws, including federal laws, in making a reasonable accommodation.  Nothing in this Policy shall require persons with disabilities or operators of homes for persons with disabilities acting or operating in accordance with applicable zoning or land use laws or practices to seek a reasonable accommodation under this Division.

## II. Publication of Policy

The City shall prominently display a notice at the counter in the Planning and Community Development Department advising those with disabilities or their representatives that they may request a reasonable accommodation in accordance with the procedures established in this Policy. A copy of the notice shall be available upon request and shall also be posted on the City's website.

## III. Definitions

As used in this Policy, "person with a disability" has the meaning set forth in the federal Fair Housing Act and the Americans with Disabilities Act and is an individual who has a physical or mental impairment that limits one or more of the major life activities of such individual, is regarded as having such impairment, or has a record of such impairment.

As used in this Policy, "reasonable accommodation" means the act of making a dwelling unit or housing facility(ies) readily accessible to and usable by a person with disabilities, through the removal of constraints in the City's land use, zoning, code, permit and processing procedures. A reasonable accommodation controls over a conflicting City regulation or requirement.

**Consent Decree – Page 23**

## IV.    Requesting an Accommodation

An application for an accommodation may be made by any person(s) with a disability, his or her representative, a developer or provider of housing for persons with disabilities, or an agency that provides residential services to persons with disabilities.  A request for accommodation may be submitted at any time the accommodation may be necessary to afford the person with a disability equal opportunity to use and enjoy the dwelling. A written acknowledgement of the request shall be sent to the applicant by the City within ten (10) days of receipt.

Requests for an accommodation may include a modification or exception to the rules, standards and practices for the siting, development, code enforcement, and use of housing or housing-related facilities that would eliminate regulatory barriers and provide a person with a disability equal opportunity to a dwelling of his or her choice.

An individual requesting an accommodation shall direct the request to the Director of the Community Planning and Development Department, orally, which shall be transcribed by the City into writing if requested by the applicant, or in writing. The individual shall submit an application for a reasonable accommodation using the appropriate City form, to be provided by the City. The City shall assist the applicant with furnishing all information maintained by the City with respect to an accommodation.  The applicant shall provide the following:

1.    Name and address of the person or entity requesting accommodation.  If the applicant is applying on behalf of a person with a disability, the name and address of the person with a disability shall also be provided.  The accommodation need not be on behalf of a specific person with a disability, as long as the person requesting the accommodation verifies that the housing is intended for the use of persons with disabilities.

2.    Address of the property for which the accommodation is requested.

3.    Indication of whether that the applicant is (a) a person with a disability, (b) applying on behalf of a person with a disability, (c) a developer or provider of housing for one or more person(s) with a disability, or (d) a provider of residential services for a person with a disability.

4.    Description of the disability at issue, the requested accommodation, and the specific regulation(s), policy, practice or procedure for which the accommodation is sought. In the event that the specific individuals who are expected to reside at the property are not known to a provider in advance of making the application, the provider shall not be precluded from filing the application, but shall submit details describing the range of disabilities that prospective residents are expected to have to qualify for the housing.

**Consent Decree – Page 24**

5.      Description of whether the specific accommodation requested by the applicant is necessary for the person(s) with the disability to use and enjoy the dwelling, or is necessary to make the provision of housing for persons with disabilities financially or practically feasible.

Any personal information regarding disability status identified by an applicant as confidential shall be retained in a manner so as to respect the privacy rights of the applicant and/or person with a disability and shall not be made available for public inspection unless required by the Texas Public Information Act. Any information received regarding the disability status identified, including but not limited to medical records, will be returned to the applicant within ten (10) days of the decision of the City Manager's designee. The Applicant need provide only the information necessary for the City to evaluate the reasonable accommodation request.

If the person with the disability needs assistance to make a request for accommodation, the City will provide assistance, including transcribing a verbal request into a written request. The applicant shall sign or indicate in writing that the transcription is accurate.

A fee shall not be required for an application for an accommodation.

## V. Review of Reasonable Accommodation Request

The Director of the Department of Community Planning and Development, or the Director of the City department or division responsible for overseeing the ordinance, rule, code, policy or practice that is the subject of the reasonable accommodation request ("Director"), shall issue a written decision on a request for accommodation within thirty (30) calendar days of the date of the application, and may either grant, grant with alterations or conditions, or deny a request for an accommodation in accordance with the required findings set forth below.

If necessary to reach a determination on the request for accommodation, the Director may request further information from the applicant consistent with applicable laws, specifying in detail the additional information that is required.  In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for this inquiry. (*See* Joint Statement of The Department of Housing & Urban Development & The Department of Justice: Reasonable Accommodations Under the Fair Housing Act #18.)  Any personal information related to the disability status identified by the applicant as confidential shall be retained in a manner so as to protect the privacy rights of the applicant and shall not be made available for public inspection unless required by the Texas Public Information Act.  Any information received regarding the disability status identified, including but not limited to medical records, will be returned to the applicant within ten (10) days of the decision of the City Manager's designee. If a request for additional information is made, the running of the thirty (30) calendar day period to issue a decision is stayed until the applicant responds to the request.

The written decision to grant, grant with alterations or conditions, or deny a request for accommodation shall be based on the following factors to the extent they are consistent with applicable  laws:

1.  Whether the housing that is the subject of the request for accommodation will be used by a person with a disability protected under the applicable laws.

2.  Whether the requested accommodation is necessary to make a dwelling available to a person with disabilities protected under the applicable laws.

3.  Whether the requested accommodation would pose an undue financial or administrative burden on the City. The determination of undue financial and administrative burden will be done on a case-by-case basis.  A finding of "undue financial or administrative burden" shall not be based on whether the requested accommodation would provide a preference or permit the housing in question to not comply with otherwise-applicable laws, ordinances, rules, codes, policies or practices that others must obey.

4.  Whether the requested accommodation would require a fundamental alteration in the nature of a City program or law, including but not limited to zoning and land use.  A finding of "fundamental alteration" shall not be based on whether the requested accommodation would provide a preference or permit the housing in question to not comply with otherwise-applicable laws, ordinances, rules, codes, policies or practices that others must obey.

In making findings, the Director may grant with alterations or conditions, reasonable accommodations, if the Director determines that the applicant's initial request would impose an undue financial or administrative burden on the City, or fundamentally alter a City program or law. The alterations or conditions shall provide an equivalent level of benefit to the applicant with respect to (a) enabling the person(s) with a disability to use and enjoy the dwelling, and (b) making the provision of housing for person(s) with a disability financially or practically feasible.

The written decision of the Director on an application for an accommodation shall explain in detail the basis of the decision, including the Director's findings on the criteria set forth below.  All written decisions shall give notice of the applicant's right to appeal and to request assistance in the appeal process as set forth in this Policy.  The notice of the decision shall be sent to the applicant by certified mail and electronic mail, if the applicant's electronic mail address is known to the City.

Nothing herein shall prohibit the applicant, or persons on whose behalf a specific application was filed, from reapplying for an accommodation based on additional grounds or changed circumstances.

If the Director fails to render a written decision on the request for accommodation within thirty (30) days, the accommodation request shall be deemed granted.

**Consent Decree – Page 26**

## VI.    **Appeal**

An applicant, or a person on whose behalf an application was filed, may appeal the written decision to deny or grant an accommodation with alterations or conditions or a denial of the accommodation no later than thirty (30) calendar days from the date the decision is mailed.

An appeal must be in writing (or reduced to writing as provided below) and include grounds for appeal. Any personal information related to the disability status identified by the applicant as confidential shall be retained in a manner so as to protect the privacy rights of the applicant and shall not be made available for public inspection unless required by the Texas Public Information Act. Any information received regarding the disability status identified, including but not limited to medical records, will be returned to the applicant within ten (10) days of the decision of the City Manager's designee.

If an applicant needs assistance appealing a written decision, the City will provide assistance transcribing a verbal request into a written appeal to ensure that the appeals process is accessible.  The applicant shall sign or indicate in writing that the transcription is accurate.

An applicant shall not be required to pay a fee to appeal a written decision.

An appeal will be decided by the City Manager or his designee.  In considering an appeal, the City Manager shall consider (a) the application requesting the accommodation, (b) the Director's decision, (c) the applicant's written statement of the grounds of the appeal, and (d) the provisions of this Policy, in order to determine whether the Director's decision was consistent with applicable fair housing laws and the required findings in this Policy.

If a written decision on the appeal is not rendered within thirty (30) calendar days from the date the appeal is received, the requested accommodation shall be deemed granted.

The decision of the City Manager or his designee shall constitute the City's final determination on the request for reasonable accommodation.

## VII.    **Other provisions**

A request for accommodation shall stay any and all proceedings, including Municipal Court proceedings, in furtherance of the enforcement of any requirement that is the subject of the request.  An accommodation request does not affect an applicant's obligation to comply with other applicable regulations not at issue in the requested accommodation.

The City shall retain, for the duration of the accommodation and at least five (5) years thereafter, written records of each request and all related records, including the City's responses and decisions.

The person or entity requesting an accommodation may file an action at any time in court to challenge the City's denial of a reasonable accommodation under the Fair Housing Act, the

**Consent Decree – Page 27**

Americans with Disabilities Act and/or any other applicable federal, state or local law.  Such persons or entities shall not, solely by virtue of having requested an accommodation under this Policy, be barred, estopped or otherwise limited in bringing an action in court against the City to challenge the denial of a reasonable accommodation.

## **ATTACHMENT B**
## **Certification of Training and Receipt of Consent Decree**

On _____, I attended training on the Fair Housing Act and Titles II and V of the Americans with Disabilities Act. I have had all of my questions concerning these topics answered to my satisfaction.

I also have been given and I have read copies of the Fair Housing Act, the Americans with Disabilities Act, and the Consent Decree entered in United States v. City of Beaumont, Civil No. 1:15-CV-00201-RC (E.D. Tex.). I understand my legal responsibilities and will comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Position with City of Beaumont

_____
Business Address

_____
Business Address Continued

_____
Business Telephone Number

_____
Date

**Consent Decree – Page 29**

## ATTACHMENT C
### Release

       In consideration for the parties' agreement to the terms of the Consent Decree entered in United States v. City of Beaumont, No. 1:15-cv-00201 (E.D. Tex.), and the City's payment to me of $_____, pursuant to the Consent Decree, I hereby agree, effective upon receipt of payment, to hereby release and forever discharge the City of Beaumont, along with its principals, predecessors, successors, insurers, agents, directors, officers, employees, former employees, administrators, assigns, and any person acting under its direction or control, from any and all claims, costs, and expenses, including attorney's fees, that I have or may have had against the City of Beaumont for any of its actions through the date of entry of the Consent Decree. This Release includes, but is not limited to, all fair housing and/or Americans with Disabilities Act claims set forth or which could have been set forth, in the Complaint in this lawsuit and any other claims that I may have had against the City of Beaumont for any of its actions through the date of the entry of the Consent Decree.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

Executed this _____ day of _____, 2016.

_____
Signature

_____
Print Name

_____
Address

_____
Address Continued

**Consent Decree – Page 30**

**ATTACHMENT D**
**List of Other Aggrieved Persons**

| | |
|---|---|
| Barbara Beauchamp | $10,000 |
| John Franks | $15,000 |
| Connie and Ron Lee | $30,000 |
| James Leysath | $50,000 |
| Jan Leysath | $35,000 |
| Lynette McCreary | $25,000 |
| Arvy McKinney | $30,000 |
| Christel Wise | $40,000 |

**Consent Decree – Page 31**